OSCN Found Document:MOORE v. BLACKWELL

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 MOORE v. BLACKWELL
2014 OK CIV APP 37
Case Number: 109685
Decided: 12/31/2013
Mandate Issued: 04/29/2014
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2014 OK CIV APP 37, __ P.3d __

TERRY MOORE, individually and as next friend of JERRIT MOORE, a minor, Plaintiff/Appellant,
v.
ROBERT BLACKWELL and FARMERS INSURANCE COMPANY, INC., Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF CLEVELAND COUNTY, OKLAHOMA

HONORABLE STEPHEN W. BONNER, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

David L. Smith, DAVID L. SMITH, ATTORNEY AT LAW, Oklahoma City, Oklahoma, for Plaintiff/Appellant
Phillip P. Owens, II, CHRIS HARPER, INC., Edmond, Oklahoma, for Defendant/Appellee Robert Blackwell
Paul B. Middleton, DOBBS & MIDDLETON, Oklahoma City, Oklahoma, for Defendant/Appellee Farmers Insurance Company, Inc.

JANE P. WISEMAN, JUDGE:

¶1 Plaintiff Terry Moore, individually and as next friend of Jerrit Moore, a minor, appeals a judgment entered in Defendants' favor resulting from a jury verdict rendered on April 11, 2011, in favor of Defendant Robert Blackwell. Having reviewed the record and pertinent law, we reverse and remand for further proceedings.

FACTS

¶2 According to Plaintiff's appellate brief, on September 1, 2007, Jerrit Moore, then a 12 year-old boy, was walking with a friend along an I-35 service road in Norman, Oklahoma. The boys were initially walking on the road against traffic, but because of an approaching hill, they decided it would be safer to cross "the center line to walk with the traffic, with the intent of returning to the other side of the road once they negotiated the hill." Because it was dark, only the moonlight and vehicle headlights illuminated the area in which they were walking. While driving on the service road, Robert Blackwell came upon the boys before he saw them, slammed on the brakes, and swerved to the left. Blackwell struck Jerrit Moore injuring him.

PROCEDURAL BACKGROUND

¶3 Plaintiff, Jerrit Moore's father, filed this negligence action against Defendants claiming: "The cause of the crash was the negligence of Robert Blackwell. As a direct and proximate cause of Robert Blackwell's [negligence], the plaintiffs have and will incur medical treatment and bills, suffered personal injury and been damaged in an amount in excess of Ten Thousand Dollars ($10,000)." Plaintiff also asserted that at the time of the accident, "Defendant Farmers had a policy of uninsured/underinsured motorist coverage in force and effect in favor of the Plaintiffs for injuries received and caused by the negligence of an uninsured or underinsured motorist."

¶4 Blackwell filed an answer denying any negligence on his part and stating:

This Defendant admits that on September 1, 2007, he was traveling on Interstate 35 service road in a legal and lawful manner when without notice or knowledge, two young men/minors were walking down the middle of the lane of traffic occupied by this Defendant, of course they were not wearing any type of reflective clothing, had no lights, had no warning, for which said minors, the Plaintiff Jerrit Moore, was negligent in common law negligence per se which was the proximate cause and sole cause of this accident.

¶5 Farmers Insurance Company, Inc., answered denying the allegations against Blackwell, alleging Jerrit Moore was negligent, and confirming the existence of the uninsured/underinsured policy described above. Farmers later moved to bifurcate the claims asserted against it and asked the trial court to exclude at trial any mention of Farmers or the existence of insurance. Farmers agreed not to participate in the trial and to be bound by the jury's verdict.

¶6 During trial, Plaintiff called fact witnesses Defendant Blackwell, Terry Moore, Jerrit Moore, and Phillip Cornelius, the friend walking with Jerrit Moore at the time of the accident. Defendant Blackwell then called Michael Thomson, the investigating officer, and Terry Harrison, an accident reconstructionist. Plaintiff objected to Blackwell's witnesses testifying as to fault or causation.

¶7 At the conclusion of trial, the jury found in favor of Defendant Blackwell. As a result, the jury's verdict in favor of Blackwell extinguished Plaintiff's claims against Farmers. The trial court entered judgment for both Defendants based on the jury's verdict and granted Blackwell "reimbursement of costs in the amount of $1,345.22 plus statutory interest and costs."

¶8 Plaintiff brings this appeal from the judgment in Defendants' favor entered as a result of the jury verdict.

STANDARD OF REVIEW

¶9 "Rulings concerning the admission of evidence are measured against the abuse of discretion standard." Holm-Waddle v. William D. Hawley, M.D., Inc., 1998 OK 53, ¶ 5, 967 P.2d 1180, 1182. We review a trial court's ruling on the admissibility of expert opinions on an abuse of discretion standard. Belle Isle v. Brady, 2012 OK CIV APP 99, ¶ 24, 288 P.3d 259, 266 (citing Christian v. Gray, 2003 OK 10, ¶ 42, 65 P.3d 591, 608). "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Spencer v. Oklahoma Gas & Elec. Co., 2007 OK 76, ¶ 13, 171 P.3d 890, 895 (emphasis omitted).

¶10 "The test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if the alleged errors had not occurred." Johnson v. Ford Motor Co., 2002 OK 24, ¶ 16, 45 P.3d 86, 92-93.

ANALYSIS

I. Expert Testimony

¶11 Plaintiff argues the trial court abused its discretion in allowing, over repeated objections, Defendant's expert witnesses, Michael Thomson, the investigating officer on the day of the accident, and Terry Harrison, Defendant's accident reconstruction expert, to testify on issues that should have been reserved for the jury.

¶12 Plaintiff initially filed a motion in limine on March 29, 2010, and then an amended motion in limine on January 13, 2011, seeking to exclude such testimony. The trial court overruled these motions on January 18, 2011. When the case was subsequently reassigned to another judge, Plaintiff re-urged his motion to the new judge who overruled the renewed motion on April 8, 2011. At the beginning of trial on April 11, 2011, Plaintiff requested and was granted a continuing objection to Harrison's testimony "to every question that is asked and answered by that expert that is nonscientific." On the second day of trial, Plaintiff reurged his objection to Harrison's testimony before he testified. The trial court granted Plaintiff a "standing objection" to the "limited questions" of "causation and negligence."

¶13 Plaintiff on appeal asserts no expert testimony is necessary in this case on these issues as it is a "simple automobile-pedestrian accident." Plaintiff contends:

No scientific evidence is required for the jury to make a determination of whether or not these individuals, [Blackwell] was negligent in operation of his vehicle, or whether [Jerrit Moore] acted prudently, based upon his age and experience, or whether he acted in negligent fashion. Expert testimony was not needed, and did not assist the trier of fact.

He primarily relies on the Oklahoma Supreme Court case of Gabus v. Harvey, 1984 OK 4, 678 P.2d 253, to support his argument that expert witnesses may not offer opinion testimony on the issues of negligence and the cause of a collision and the allowance of such opinion testimony is reversible error.

¶14 In Gabus, a negligence case also arising out of an automobile-pedestrian accident, a party sought to introduce an investigating police officer's opinion as to what caused the accident. The trial court allowed its introduction, and the officer testified that the pedestrian/plaintiff failed to yield the right of way to the defendant's moving vehicle. Id. at ¶ 5, 678 P.2d at 254. The plaintiff's "counsel moved for a mistrial, asserting that the officer's opinion invaded the province of the jury because it determined the ultimate issue of fault." Id. at ¶ 6, 678 P.2d at 254. The trial court denied the motion and the trial continued. Id. The jury found the plaintiff to be 75 percent negligent and the defendant, 25 percent negligent. Id.

¶15 The Oklahoma Supreme Court reversed the judgment resulting from the jury verdict and remanded for a new trial. Id. at ¶ 30, 678 P.2d at 257. The Court based its holding on provisions of the Oklahoma Evidence Code, including 12 O.S.1981 § 2704 which stated: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Id. at ¶ 10, 678 P.2d at 255. The Court reviewed § 2704 in conjunction with § 2702, which provided that a qualified expert witness may testify in the form of an opinion "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[1] Id. at ¶ 13, 678 P.2d at 255. Pursuant to § 2702, "The test . . . is usefulness. Will the expert testimony assist the trier of fact? If not helpful, then expert conclusions or opinions are inadmissible." Id. at ¶ 16, 678 P.2d at 255.

¶16 In reviewing the admitted evidence under these statutory provisions, the Gabus Court ultimately held the expert's opinion on the cause of the collision did not assist the jury to understand the evidence because the opinion "concerned facts that could be readily appreciated by any person who drives an automobile or crosses streets" and "[n]o special skill or knowledge was needed to understand these facts and draw a conclusion from them." Id. at ¶ 18, 678 P.2d at 256. The Court further held that "where the normal experiences and qualifications of lay[] jurors permit them to draw proper conclusions from the facts and circumstances, expert conclusions or opinions are inadmissible. The expert conclusion here was not helpful and should not have been admitted." Id.

¶17 The Supreme Court also concluded the testimony was plainly prejudicial because it "put the stamp of expertise upon an issue that the jury was fully competent to decide." Id. at ¶ 25, 678 P.2d at 257. The Court held that it was prejudicial error to admit the expert testimony on the issue of fault: "We find it highly probable that in this case the jury was unduly influenced by the opinion of one whose opinion was not needed by them to reach an intelligent conclusion as to the cause of the accident." Id. at ¶ 28, 678 P.2d at 257.

¶18 Faced with evidentiary circumstances almost identical to Gabus, we reach the same conclusion. Officer Michael Thomson testified on direct examination by Defendant's counsel that as an investigating officer, he tries to determine "what happened at the accident." He further testified that although he tries "to determine who's most at cause in the accident," he does not "try to determine fault."[2] During later direct examination, defense counsel asked the trial court to allow Thomson to testify as to whether he thought Defendant was at fault. Plaintiff's counsel objected again citing Gabus. The trial court overruled the objection allowing defense counsel to inquire about fault.[3] Thomson testified as follows:

Q. Officer Thomson, after you completed your investigation using your background and experience, did you find any type of, as you call it "fault," on [Defendant]?
A. Well, again, as I say, I have always been trained not to determine fault. As far as [Defendant] goes, I determined that there was nothing for me to be able to site [sic] him for. [4]

When questioned further on cross-examination as to fault,[5] Thomson testified as follows:

Q. So is it your testimony that [Defendant] is fault-free?
A. I'm not saying fault on anybody. I'm just assessing who might have been most at cause in the accident--
Q. Okay.
A. -and due to the fact that [Jerrit Moore], from my information, went to the center of the roadway instead of to the edge of the roadway, I would lend more credence at him being more at fault in the accident or more responsible--
Q. [Jerrit] Moore?
A. Yes, sir. In this accident.[6]

In his closing argument to the jury, Defendant's counsel summarized this testimony by stating, "In fact, everything you heard from this case is that [Defendant] was innocent of negligence from the police officer who has nothing to gain or lose. . . . He testified [Defendant] did nothing wrong."

¶19 On defense counsel's direct examination, Terry Harrison, Defendant's accident reconstructionist who was also a police officer for the City of Oklahoma City, gave the following opinion on fault and causation:

Q. Did you - based upon your background and experience and education as well as your on-the-job experience as well, do you have an opinion as what the cause of this accident was?[7]
A. Yes. Based on all the evidence I have, based on the testimony of all the people involved, based on the physical evidence on the roadway, and my understanding of the State statutes and how they are applied here, I find that the plaintiff was walking in the middle of the roadway, which he is required to walk on the side of the roadway facing traffic or on the sidewalk if it's provided. And that [Defendant] took appropriate action and would be taking the same action I would have taken.
I find no negligence or any fault on [Defendant] that he did anything wrong. He was within the speed limit. He recognized the danger and he reacted to that, and he act[ed] appropriately.[8]

(Emphasis added.)

¶20 Defendant argues, "There is nothing prohibiting an expert from testifying as to the ultimate issue to be decided by the jury. This was an auto-pedestrian accident involving issues of lighting, visibility, road elevation, and other matters not within the knowledge of ordinary jurors." Both Thomson and Harrison could and did testify on such matters as "lighting, visibility, road elevation," and other observations of physical characteristics of the accident scene, physical evidence at the scene, and results of their investigations that were helpful to the jury. Plaintiff did not object at trial and does not on appeal take issue with such testimony.[9] Unlike their opinions on "fault" and "cause," their testimony on these matters involved technical or specialized knowledge.

¶21 Pursuant to 12 O.S.2011 § 2702, to be admissible, the "scientific, technical or other specialized knowledge" must "assist the trier of fact to understand the evidence or to determine a fact in issue." Does the opinion of an investigating police officer or an accident reconstructionist as to whose fault caused the accident help the jury "understand the evidence" or "determine a fact in issue"? Does such an opinion make "the existence of any fact . . . more probable or less probable" than it would be without that opinion? American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Evidence after Daubert, 157 F.R.D. 571, 573-75 (1994). We suggest that it has the effect, not of advancing the jury's understanding of the evidence to any degree or of promoting accurate fact-finding, but of making a verdict of liability or no liability more probable by telling the jury what conclusion to draw.[10] 29 Charles Alan Wright, Kenneth W. Graham, Jr., Victor James Gold, Michael H. Graham, Federal Practice and Procedure § 6264 (1st ed. 2013).

¶22 There is clear case law prohibiting expert opinion testimony on negligence and causation because it "did not assist the jury" and "was not needed by them to reach an intelligent conclusion as to the cause of the accident." Gabus v. Harvey, 1984 OK 4, ¶¶ 22, 28, 678 P.2d 253, 257. The ultimate opinions of these two witnesses that Blackwell was fault-free and that Jerrit Moore's negligence caused the collision are not opinions requiring special skill or knowledge, nor do such opinions constitute technical matters requiring special skill to interpret the evidence and reach a conclusion.[11] This case involves facts comprehensible by anyone who has walked on a roadway or driven an automobile at night and encountered pedestrians or other hazards in the roadway. In line with Gabus, these are situations within the common knowledge of most jurors who have driven a motor vehicle. Id. at ¶ 18, 678 P.2d at 256.

¶23 It is well-established in the holding in Gabus that the objected-to testimony about fault and causation dealt with matters well within the jury's "normal experiences and qualifications." Id. Was special knowledge or expertise, in the form of an opinion on the ultimate issue, of assistance here to understand whether either party was negligent and, if so, whether that negligence caused the collision?[12] To grasp and evaluate the evidence and draw well-reasoned conclusions from it did not require an expert to tell the jury what conclusion to reach.[13] As in Gabus, this testimony on negligence, fault and causation cannot be considered to have assisted the jury.[14] The jury had the benefit of the testimony of the two experts detailing without objection what their investigations had revealed on numerous subjects--point of impact, speed of Defendant's vehicle both before and at impact, reaction time, stopping distance, the effect of antilock brakes, lighting conditions--testimony helpful to the jury in reaching its verdict.[15] Plaintiff properly objected to any expert offering his opinion finding "no negligence or any fault on [Defendant]" and finding that Jerrit Moore was "more at fault in the accident."

¶24 In addition to being unneeded,[16] such testimony was also prejudicial, because it "put the stamp of expertise upon an issue the jury was fully competent to decide." Id. at ¶ 25, 678 P.2d at 257. Thomson investigated the accident as an officer for the City of Norman police department, and Harrison was a police officer for the City of Oklahoma City at the time he testified, both thus occupying official positions that carry the undue "'stamp of authenticity'" found to be objectionable in Gabus. Id. at ¶ 26, 678 P.2d at 257 (quoting Maben v. Lee, 1953 OK 139, ¶ 11, 260 P.2d 1064, 1067).

¶25 The Supreme Court has further stated that to allow such testimony permits the jury to substitute an expert witness's opinion for the "combined judgment of the jury, encouraging a contest by experts rather than a trial by witnesses."[17] Id. at ¶ 25, 678 P.2d at 257. In the trial court's gatekeeping capacity, for the reasons elucidated in Gabus, it was reversible error to allow Thomson and Harrison to state opinions or conclusions on the questions of negligence, fault, or whose conduct did or did not cause the accident.

II. Impeachment Testimony 

¶26 Plaintiff next contends the trial court "improperly prevented [him] from examining witnesses and Defendant after giving perjured testimony." Plaintiff's counsel asked Defendant a question during trial regarding a prior recorded statement he had given. Plaintiff argues Defendant denied giving a recorded statement "in complete contradiction to his deposition testimony." Plaintiff argues the trial court should have granted "Plaintiff's counsel some leeway in questioning the Defendant on this issue" as "[p]erjured testimony goes directly to the credibility of the witness." Plaintiff asserts the trial court prevented him from attacking Defendant's credibility.

¶27 Defendant argues the trial court did not abuse its discretion in refusing to allow Plaintiff's counsel to question Defendant about his deposition testimony about a recorded statement given to his insurance company. Defendant asserts the trial court refused "because reading the deposition question and answer to the jury would disclose to the jury the existence of insurance, in violation of 12 O.S. § 2411 and requir[e] a mistrial." Defendant further asserts that because no recorded statement existed and Plaintiff had none at trial with which to cross-examine Defendant, the trial court properly precluded Plaintiff from inquiring about it.

¶28 The admission of a prior inconsistent statement to attack the credibility of a witness is governed by 12 O.S. §§ 2607 and 2613. Crussel v. Kirk, 1995 OK 41, ¶ 8, 894 P.2d 1116, 1118-19. The Crussel Court stated:

Before allowing evidence of a witness's prior inconsistent statements, the nisi prius court must satisfy itself that the proffered testimony is sufficiently inharmonious with the declarant's in-court testimony and is relevant to a non-collateral matter. A proper foundation must be laid before the extrinsic impeachment evidence may be admitted.

Id. at ¶ 8, 894 P.2d at 1119 (footnotes omitted).

¶29 Based on this criterion, Defendant argues Plaintiff failed to lay any foundation because no such statement existed. Instead, Plaintiff intended to impeach Defendant with his prior inconsistent testimony about whether he had actually given a prior statement instead of impeaching him with the substance of the "non-existent recorded statement." Defendant argues that by doing so, Plaintiff "would have created a mistrial by informing the jury of the existence of insurance. Further whether [Defendant] gave a recorded statement to his insurance company or not was wholly collateral to the issues of the case."

¶30 In response to Plaintiff's counsel's request during trial to question Defendant about the recorded statement, the trial court stated: "Counsel, I read that deposition. He gave a report. Now, that's what he said in the deposition and that was to the insurance company. No, sir. You know, you can't get it in directly when I would have to declare a mistrial if that's what it comes down to." After a review of the record, we conclude the trial court did not abuse its discretion by excluding this evidence. Plaintiff sought to impeach Defendant's trial testimony denying any previous recorded statement with his deposition testimony admitting giving a statement to his insurance company. This cannot be said to be relevant to a non-collateral matter. Id. 

¶31 We find the same to be true as to Plaintiff's contention that the trial court improperly refused to allow him "to ask Defendant a causation question--if you had driven slower, this accident would not have happened. This is the ISSUE of the case and his answer would clearly weigh on his credibility!!!" (Emphasis omitted.) A review of Defendant's trial testimony reveals Plaintiff did in fact ask Defendant this question and Defendant provided an answer. On direct examination, Plaintiff's counsel asked Defendant the following:

Q. Had you been driving slower, do you believe this incident would have happened?
A. I don't know if slower--how much slower? I mean, five miles an hour slower? No. I think it would still have occurred, the same thing.

(Emphasis added.) On redirect, Plaintiff's counsel asked the same question: "At the end of the day, had you taken precautions and driven slower, would this crash have happened?" Before Defendant could respond, the trial court sustained defense counsel's objection that the question was outside his recross-examination of the witness. We find no abuse of discretion in this ruling and Defendant had previously answered it on direct examination.

III. Jury Instructions

¶32 Plaintiff asserts Defendant failed to meet his burden of proof to show that Jerrit Moore "was negligent resulting in the trial court failing to properly instruct the jury." Plaintiff argues the trial court improperly instructed the jury based on Thomson's and Harrison's testimony regarding Jerrit Moore's negligence. Plaintiff argues "Harrison improperly attempted to establish the knowledge and education of his eight-year-old grandson, the grandson of a police officer, as a 'standard' to be applied in this case" when the "evidence to overcome the presumption [Moore] was not negligent must be determined based on his particular facts and circumstances, education and experiences, not by what some 8 year old grandson of an expert witness was taught." Plaintiff states, "Had the Trial Court appropriately excluded the testimony of Thomson and Harrison, the Plaintiff's modified jury instruction, OUJI 9.4 [Child's Capacity for Negligence] would have been given as there was no other evidence overcoming the presumption [Moore] was not negligent. This would have resulted in a verdict for the Plaintiffs."

¶33 Because we conclude the admission of opinion testimony by Thomson and Harrison is reversible error requiring a new trial--at which neither of these two witnesses may give opinion testimony as to the negligence or fault of any party, including Jerrit Moore, or as to causation of the collision--we do not further address this issue.

CONCLUSION

¶34 Because the conclusions of expert witnesses admitted into evidence, contrary to the strictures of Gabus, on the issues of whether either party was negligent and to what extent that negligence, if any, caused the collision, were not needed or helpful to the jury and were plainly prejudicial, we reverse and remand for a new trial consistent with the views expressed in this Opinion. Further, we decline to address any issues raised in the amended petition in error that were omitted from the appellate briefs. Oklahoma Supreme Court Rule 1.11(k)(1), 12 O.S.2011, ch. 15, app. 1 ("Issues raised in the Petition in Error but omitted from the brief may be deemed waived.").

¶35 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BARNES, V.C.J., concurs, and FISCHER, P.J., concurs in part and dissents in part.

FOOTNOTES

[1] Although additions were made to this provision in 2009, those additions do not change the fact that the "scientific, technical or other specialized knowledge" must still "assist the trier of fact to understand the evidence or to determine a fact in issue."

[2] We conclude that Thomson cannot circumvent the well-understood holding in Gabus by consistently denying doing exactly what he is in fact doing. Despite Thomson's protestations, we see no distinction, for testimony purposes in the jury's eyes, between "at cause" and "at fault." If "at cause" refers to any party receiving a citation, Officer Thomson may not testify to this any more than he may testify as to which party is liable, i.e., "at fault," for the collision. We disagree with the dissent that Thomson "did not answer" the "fault" question and further disagree that a reasonable juror would interpret Thomson's use of the word "fault" as a "misstatement which [he] immediately corrected with the language 'or more responsible.'"

[3] Experience tells us that when "fault" questioning is allowed, "citation" testimony will not be far behind. And, defense counsel told the jury in closing argument, "[The police officer] says that [Defendant] violated no laws."

[4] We disagree with the dissent's conclusion that it is unlikely that the jury was "unduly influenced" by Thomson's opinion that there was nothing to cite Defendant for and that allowing this evidence was not a clear abuse of discretion. The dissent does note that this "citation" testimony is objectionable because it states a legal conclusion. We believe the same characterization could be said to apply to "fault" and "negligence" testimony.

[5] Once Defendant's counsel on direct examination breached the Gabus prohibition over Plaintiff's repeated objections, Plaintiff's counsel's cross-examination on Thomson's "fault" testimony cannot, in our view, constitute "invited error." One would be hard-pressed to know how much more to object to preserve the error, and once the cat was out of the bag, Plaintiff could not be expected to ignore the substance of Thomson's "fault" testimony. In light of the trial court's continued allowance of such testimony over Plaintiff's objections, we cannot characterize Plaintiff's counsel as "solely responsible for the error," as the dissent does. In light of the trial court's blanket allowance of "expert" testimony on fault, negligence, and who caused the collision, we see no basis, as the dissent does, for requiring Moore to file a motion for directed verdict or for new trial on the citation testimony in order to preserve the error on appeal.

[6] Officer Thomson's testimony on these issues should not have been allowed after he testified on direct examination, "I don't try to determine fault. That's not my job as a police officer." Tr., p. 127. And when asked on direct whether he found any "fault" on Defendant, Thomson testified, "I have always been trained not to determine fault." Tr., p. 138. This would seem to indicate that this sort of determination is not within his training and expertise. After an overnight recess, before Defendant called his accident reconstructionist to the stand, Plaintiff again objected to any testimony by Harrison as to fault or causation and further argued it would be cumulative to Thomson's fault testimony the day before. The trial court remembered that Thomson stated he could not determine fault for either one of the parties, but the court believed incorrectly that Thomson had not rendered an opinion as to fault. Tr., p. 156.

[7] The dissent finds nothing improper about asking "What caused this accident?" We view this, and believe most jurors would view this, as the equivalent of asking "Who caused this accident?," i.e., who was negligent in causing this collision? Harrison apparently understood it this way when he answered the question by saying he found "no negligence or any fault on [Defendant] that he did anything wrong."

[8] Although Plaintiff objected in his amended motion in limine to Harrison's testimony on more than twenty subjects, Plaintiff did not preserve his objection on all these points at the time of trial. Before Harrison testified, Plaintiff asked for, and was granted, a continuing objection to Harrison giving expert opinion testimony on only two subjects, "causation and negligence." Tr., pp. 157-58. Plaintiff did not claim error on these twenty or so subjects, or brief them in his appellate briefs where he specifically argued trial court error in allowing Thomson and Harrison to testify "as to causation and negligence." Moore's brief in chief, pp. 23-24; Moore's reply brief, pp. 10-11. To be clear, we do not find improper Harrison's testimony about where the point of impact was, or the speed of Defendant's vehicle, or what the physical evidence showed about Defendant's braking or attempts to take evasive action. In addition, Plaintiff states in his appellate brief that he stipulated Defendant was not speeding. But, to allow an expert to testify further that Jerrit Moore's improper conduct caused the collision, and that Defendant was not negligent, is error.

[9] The dissent discusses the testimony of both Thomson and Harrison on these matters, such as swerve and skid marks, point of impact, and conditions at the time of the accident. As we believe the Opinion makes clear, this testimony is not prohibited--nor was it objected to, complained of on appeal, or the basis for our reversal of this judgment. But we do not believe that such admissible testimony constitutes a license for an expert to then cross the Gabus threshold and offer his legal conclusion on an issue that, without the expert's opinion, "the jury was fully competent to decide." Gabus v. Harvey, 1984 OK 4, ¶ 25, 678 P.2d 253, 257.

[10] We are persuaded that expert opinions should not be admitted that "'merely tell the jury what result to reach.'" Hooks v. State, 1993 OK CR 41, ¶ 13, 862 P.2d 1273, 1278, cert. denied, 511 U.S. 1100, 114 S. Ct. 1870 (quoting Moore v. State, 1990 OK CR 5, ¶ 49, 788 P.2d 387, 399).

[11] The question to be answered here, pursuant to the Evidence Code, is not whether these opinions go to the "ultimate issue" before the jury, which they may, if admissible, but whether such opinions constitute "scientific, technical or other specialized knowledge" that will assist the jury. 12 O.S.2011 § 2702 (emphasis added). We do not conclude that such testimony can never be admissible in a vehicular negligence case, but it is not admissible in this one.

[12] We think such questions very clearly tell jurors what conclusion to reach about a party's conduct.

[13] "[E]xpert testimony fails to assist if unfair prejudice outweighs probative value . . . ." 29 Charles Alan Wright, Kenneth W. Graham, Jr., Victor James Gold, Michael H. Graham, Federal Practice and Procedure § 6264 (1st ed. 2013).

[14] To the extent the dissent argues that "fault" and "causation" testimony should be allowed as part of "the entirety of the evidence," this in our estimation renders Gabus meaningless. Although the dissent does not find such testimony to be sufficiently "prejudicial," Gabus clearly does as discussed below.

[15] The dissent finds no distinction between this case and Covel v. Rodriguez, 2012 OK 5, 272 P.3d 705. The primary holding in Covel on the admissibility of expert testimony turned on whether the objecting party challenged the testimony by a timely objection. The Supreme Court said, "This Court has held that a party cannot after introduction of evidence without objection, have it stricken on grounds that it is incompetent." Id. at ¶ 8, 272 P.3d at 709 (emphasis added). The Court would not condone allowing a party to object to expert witness testimony after it was admitted without objection: "By failing to object, the error is waived on appeal . . . ." Id. at ¶ 9, 272 P.3d at 710. One cannot allow an expert's testimony to be admitted and then try to discredit that testimony after all the evidence is in. Id. There are clear distinctions between this case and Covel.

[16] As the Supreme Court concluded in Gabus, "This is not a case where the jury needed the opinion of an expert about fault." Gabus v. Harvey, 1984 OK 4, ¶ 25, 678 P.2d at 253, 257. As to characterizing either Thomson's or Harrison's testimony on whose fault caused the collision as permissibly "suggesting an inference," as the dissent does, we note the Evidence Subcommittee's Note to Section 2702: "Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference." Okla. Stat. tit. 12, § 2702 (West 2009).

[17] To follow the dissent's reasoning in allowing expert opinions on fault and causation would in our view, by endorsing a "contest of experts," unnecessarily drive up the cost of litigating cases when these issues, according to our Supreme Court, are within a jury's "normal experiences and qualifications."

FISCHER, P.J., concurring in part and dissenting in part:

¶1 The central issue in this case is the scope of admissible testimony from expert witnesses. The Majority relies on Gabus v. Harvey, 1984 OK 4, 678 P.2d 253, and that Court's interpretation of section 2702 of the Evidence Code to conclude that it was reversible error to allow Terry Harrison and Michael Thomson "to state opinions or conclusions on the questions of negligence, fault, or whose conduct did or did not cause the accident." The Majority also concludes, in reliance on Gabus, that this testimony was prejudicial because Thomson and Harrison were police officers and that a new trial is required. Although I agree with the Majority that the district court failed to follow Gabus in determining the admissibility of Harrison's and Thomson's expert opinion testimony, I respectfully dissent because I believe Gabus has been abrogated and is no longer the law in Oklahoma.[1]

I. The Scope of Admissible Expert Opinion Testimony

¶2 Title 12 O.S.2011 § 2702 is the controlling statute on the central evidentiary issue and provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise. . . .

This statute is "identical in substance" to Federal Rule of Civil Procedure 702 and, therefore, "federal court decisions may be examined for persuasive value." Christian v. Gray, 2003 OK 10, ¶ 16, 65 P.3d 591, 596 (adopting the federal standard announced in Daubert v. Merrell Dow Pharm., 509 U.S. 579, 113 S. Ct. 2786 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999), for determining the admissibility of expert witness testimony). The federal courts have determined that the statute establishes a two-pronged test for determining the admissibility of expert witness testimony: "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592, 113 S. Ct. at 2796. The first prong is not an issue in this case with respect to either Harrison or Thomson. Both witnesses were qualified as expert witnesses by their "knowledge, skill, training [and] education" without objection from Moore. It is the Majority's application of the second prong of the section 2702 test with which I disagree.

A.The Daubert Test

¶3 When the federal counterpart to section 2702 was adopted, there was some uncertainty as to what the second prong required.

The courts disagree over the precise meaning of Rule 702's assist requirement. Expert testimony was admissible under prerules common law only where the subject of that testimony was beyond the experience or knowledge of ordinarily lay people and would provide "appreciable help" to the trier of fact. The "assist" requirement of Rule 702 seems less demanding but the provision's language is ambiguous. Some courts restate the test by asking whether expert testimony would be "helpful," but this adds no clarity. Many modern courts interpret the "assist" requirement of Rule 702 as if it restates the common law. For example, some courts take the position that expert testimony does not "assist" if the jury can use its common sense to comprehend the evidence at some reasonable level. Other courts believe that Rule 702 adheres to the common-law principle that expert testimony must be of "appreciable help."

29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6264 (1st ed. 1980).

¶4 Gabus focuses on the second prong of section 2702 and adopts the "prerules common law approach."

The testimony as to causation introduced here did not assist the jury. It concerned facts that could be readily appreciated by any person who drives an automobile or crosses streets. No special skill or knowledge was needed to understand these facts and draw a conclusion from them. In such a case as this, where the normal experiences and qualifications of laymen jurors permit them to draw proper conclusions from the facts and circumstances, expert conclusions or opinions are inadmissible.

Gabus, 1984 OK 4, ¶ 18, 678 P.2d at 256. The Majority follows this same approach concluding that Harrison's and Thomson's expert testimony did not assist the jury because this case "involves facts comprehensible by anyone who has walked on a roadway or driven an automobile at night and encountered pedestrians or other hazards in the roadway."

¶5 Gabus was decided six years after the enactment of section 2702 by a seven-member Court with three members dissenting. The Gabus Majority recognized that the new statute "expand[s] slightly the pre-Code standard which admitted expert testimony only where the trier of fact was otherwise unable to understand the issues." Id. ¶ 14, 678 P.2d at 255. Nonetheless, the Court found the investigating officer's opinion that the plaintiff failed to yield the right-of-way was inadmissible. As Gabus articulates the second prong: "The test under § 2702 is usefulness." Id. ¶ 16, 678 P.2d at 255. "[W]here the normal experiences and qualifications of laymen jurors permit them to draw proper conclusions from the facts and circumstances, expert conclusions or opinions are inadmissible." Id. ¶ 18, 678 P.2d at 255. The "conclusion of the officer . . . was not useful since the jury was just as capable of drawing a proper conclusion from those facts as was the officer." Id. ¶ 22, 678 P.2d at 257.

¶6 The usefulness test announced in Gabus is determined by the common law focus on "the normal experiences and qualifications of laymen jurors," id. ¶ 18, 678 P.2d at 256, and whether the expert's testimony is "beyond the experience or knowledge of ordinary lay people." 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6264 (1st ed. 1980). In my view, that approach was rejected in Daubert in favor of the relevance test.

Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." This condition goes primarily to relevance. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 3 Weinstein & Berger ¶ 702[02], p. 702-18.

Daubert, 509 U.S. at 591, 113 S. Ct. at 2795. As explained in American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Evidence after Daubert:

The [Daubert] Court noted that the second prong of its test -- that the evidence assist the trier of fact -- is related to the concept of "relevancy" set forth in Federal Rules of Evidence 401 and 402. Rule 401 defines relevant evidence as that evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Court in effect held that evidence meeting the foregoing definition would necessarily "assist the trier of fact" and thereby satisfy that prong of Rule 702.

157 F.R.D. 571, 574-75 (1994). Consequently, Daubert is among the courts that:

[I]mplicitly reject the notion that Rule 702 merely preserves the common law. These courts assume that even where the jury can understand the evidence at some level, expert testimony satisfies the "assist" requirement if it advances the jury's understanding to any degree. The drafters seemed to adopt the latter interpretation.

29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6264 (1st ed. 1980).

¶7 The Daubert articulation of the second prong is also consistent with the Advisory Committee Notes to Rule 702:

Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts. . . . The use of opinions is not abolished by the rule, however. It will continue to be permissible for the experts to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts.

Fed. R. Evid. 702. The Oklahoma Evidence Subcommittee's Note to Okla. Stat. tit. 12, § 2702 (West 2009) is identical and further states that section 2702 "reflects Oklahoma law."

¶8 Almost twenty years after Gabus was decided, Oklahoma adopted the Daubert rule in Christian v. Gray: "Oklahoma courts should apply Daubert and Kumho . . . when determining the admissibility of an expert's opinion." Christian, 2003 OK 10, ¶ 53, 65 P.3d at 611. In doing so, Christian specifically adopted the Daubert articulation of the second prong test: "The evidence must also 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This requirement 'goes primarily to relevance.'" Id. ¶ 9, 65 P.3d at 597 (citing Daubert, 509 U.S. at 591). Therefore, after Christian was decided, the common law test for usefulness described in Gabus was abrogated in favor of the relevance test, in my view.

B. Application of the Relevance Prong of the Daubert Test in Covel

¶9 Not only has the Oklahoma Supreme Court adopted the Daubert relevance test for determining the admissibility of expert witness testimony, but also it has applied that test in Covel v. Rodriguez, 2012 OK 5, 272 P.3d 705, the Court's most recent treatment of expert witness testimony in automobile accident cases. Covel involved a tort claim on behalf of the driver of a vehicle who died after colliding with a bus. The Court found no fundamental error in admitting opinion testimony from the investigating officer that the brakes on the bus were not working properly because there was only one skid mark and there was no antilock braking system.

¶10 The Court also found no error in permitting the defendants' expert to testify that the bus could not have avoided the collision because within the time, speed and distance facts of the case the driver could not have reacted any faster than he did, and the bus could not have slowed any faster than it did. The Majority accurately notes the procedural difference between Covel and this case based on the lack of objection during trial to the expert testimony in Covel and the repeated objections to that testimony in this case. However, I cannot read Covel as narrowly as the Majority and therefore conclude that the procedural difference does not distinguish Covel from this case.

¶11 First, the fact that Gabus is neither cited nor discussed in Covel is, in my view, significant. The relevant facts in Gabus are different, but only to the extent that the police officer in Gabus testified without the benefit of any physical evidence and based his opinion solely on the statements of the plaintiff. Both Thomson and Harrison as well as the experts in Covel testified based on extensive physical evidence independent of the statements of the parties about what occurred. However, that distinction is not determinative. "In Oklahoma a physician treating a patient may use a medical history provided by the patient when making an opinion on causation of the patient's injury." Christian, 2003 OK 10, ¶ 29, 65 P.3d at 605). Nothing in the language of section 2702 prevents an expert in any other kind of case from "making an opinion on causation," whether that opinion is based solely on statements of the parties or also on physical evidence.

¶12 Second, the Majority distinguishes Covel based on its conclusion that the "primary holding in Covel on the admissibility of expert testimony turned on whether the objecting party challenged the testimony by a timely objection." The Majority supports this conclusion by quoting a portion of paragraph 9 of the Covel Opinion: "'By failing to object, the error is waived on appeal . . . .'" (Majority Opinion, n.15). Although the lack of objection is a difference between this case and Covel, the holding in Covel is not solely dependent on, or limited to that fact, in my view.

¶13 I conclude that the Covel Court also reached the fundamental error issue based on the portion of the Covel quotation omitted by the Majority: "By failing to object, the error is waived on appeal, in the absence of fundamental error." (emphasis added). Covel, 2012 OK 5, ¶ 9, 272 P.3d at 710. In addition, I reach this conclusion because in the next paragraph, the Covel Court defines "fundamental error," analyzes the testimony of Dr. Strauss, the plaintiff's expert, pursuant to that definition and concludes: "The admission of Dr. Strauss' opinions on causation, where defendants failed to object to those opinions, did not . . . constitute[] fundamental error." Id. ¶ 10, 272 P.3d at 710.

¶14 In doing so, the Covel Court followed long established Oklahoma law. "[E]rrors in admission or rejection of evidence which [result] in miscarriage of justice or constitute substantial violation of some constitutional or statutory right require reversal of a cause by this Court." Davon Drilling Co. v. Ginder, 1970 OK 51, ¶ 16, 467 P.2d 470, 474. "Nothing in [section 2104(A)(1) requiring a timely objection to preserve error in rulings on evidence] precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." 12 O.S.2011 § 2104(D). "Oklahoma courts are committed in civil cases to protecting litigants from the commission of fundamental error in the trial cases." Oklahoma Evidence Subcommittee's Note to Section 2104, Okla. Stat. tit. 12, § 2104 (West 2009). The Majority finds such fundamental error in the Gabus rule, the Covel Court did not. "We agree with the Court of Civil Appeals that there was no fundamental error." Covel, 2012 OK 5, ¶ 10, 272 P.3d at 710.

¶15 Third, the Covel Court not only affirmed the district court judgment despite the admission of the challenged expert testimony, but also discussed the plaintiff's evidentiary obligation in that case.

The plaintiffs had the burden of proving that defendants' brakes malfunctioned and that the malfunction was more probably than not the cause of Mr. Covel's death.

Id. ¶ 17, 272 P.3d at 712. To discharge that burden, the Covel Court recognized that the plaintiffs were entitled to rely on Dr. Strauss' "opinions on causation." Id. ¶ 10, 272 P.3d at 710.

By being qualified as an expert in accident reconstruction, biomechanics and human factors, Dr. Strauss was qualified to give opinions and conclusions based on his training and experience in those fields.

Id. ¶ 15, 272 P.3d at 712. Dr. Strauss testified that in his opinion the cause of the plaintiff's death was the "head-on" nature of the impact caused by the failure of the bus to stop sooner because of its defective brakes. "The admission of Dr. Strauss' opinions on causation . . . did not seriously affect the fairness or integrity of the trial. Dr. Strauss' testimony was not so manifestly unreasonable that its admission constituted fundamental error." Id. ¶ 10, 272 P.3d at 710.

¶16 As I read Covel, the Court distinguishes between testimony as to the cause of an accident and testimony about which party was negligent. A tort claim based on alleged negligence is determined by proof that the plaintiff's interest was entitled to protection from the defendant's conduct, that the defendant invaded that interest pursuant to conduct that failed to conform to the applicable standard of care, and that the resulting damage was a foreseeable consequence of the defendant's conduct. Brewer v. Murphy, 2012 OK CIV APP 109, 292 P.3d 41 (approved for publication by the Supreme Court). The Covel Court found that although the plaintiffs had to prove that the malfunctioning brakes caused the accident: "Whether defendants were negligent and, if negligent, whether the consequences could reasonably have been foreseen or anticipated, were questions for the jury to decide." Covel, 2012 OK 5, ¶ 17, 272 P.3d at 712. The Majority and I agree that testimony by an expert witness that one party was or was not negligent is not permitted. I dissent from the Majority's view that an expert is not permitted to render an opinion about the cause of an accident.

¶17 In my view, Gabus and Covel cannot be reconciled with respect to the admissibility of expert witness opinion testimony on causation. I conclude that Christian abrogated the Gabus "usefulness test" for determining the admissibility of expert witness opinion testimony pursuant to the second prong of section 2702. Consequently, after Christian, as evidenced by Covel, expert witness testimony concerning causation is admissible if it is relevant, absent some supervening constitutional provision or section of the Evidence Code, even if that testimony is well within "the normal qualifications and experience of laymen jurors." Gabus, 1984 OK 4, ¶ 18, 678 P.2d at 256.

II. Improper Testimony

A. Harrison's Negligence Testimony

¶18 Like the Majority, I find the following testimony was improper, but only as to the first sentence of the last paragraph:

Q. Did you - based upon your background and experience and education as well as your on-the-job experience as well, do you have an opinion as what the cause of this accident was?

A. Yes. Based on all the evidence I have, based on the testimony of all the people involved, based on the physical evidence on the roadway, and my understanding of the State statutes and how they are applied here, I find that the plaintiff was walking in the middle of the roadway, which he is required to walk on the side of the roadway facing traffic or on the sidewalk if it's provided. And that [Defendant] took appropriate action and would be taking the same action I would have taken.

I find no negligence or any fault on [Defendant] that he did anything wrong. He was within the speed limit. He recognized the danger and he reacted to that, and he act[ed] appropriately.

For the reasons previously stated, I find counsel's question as to the cause of the accident entirely proper pursuant to the Daubert/Christian relevance test. However, when Harrison volunteered that he found "no negligence" on the part of Blackwell, Moore's continuing objection to any testimony about negligence should have been sustained.

¶19 In my view, that conclusion is not compelled by either rationale relied on in Gabus: "[T]he officer's opinion as to appellant's failure to yield right of way should have been excluded not just because it bore on an ultimate issue, but because the conclusion of the officer did not assist the jury in its deliberations." Gabus, 1984 OK 4, ¶ 22, 678 P.2d at 256-57. First, the exclusion of evidence because it "bore on an ultimate issue" is, at best, problematic. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." 12 O.S.2011 § 2704. This Court correctly stated the rule in Madden v. Board of County Comm'rs of Hughes County, No. 97,832, slip op. at 11, (Okla. Civ. App. Feb. 24, 2004) (citing Gabus, 1984 OK 4, ¶¶ 14-16, 678 P.2d at 255): "An expert may testify on the ultimate issue . . . ."

¶20 Second, testimony that one party was negligent would certainly assist the jury in determining which of the parties was negligent. However, Harrison's statement that Blackwell was not negligent is objectionable because that was the ultimate issue in this case.[2] As the Gabus court noted, Section 2702 "expanded" the scope of admissible opinion testimony regarding the ultimate issue in a case. Nonetheless:

[A]bolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules [2701] and [2702], opinions must be helpful to the trier of fact, and Rule [2403] provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.

Oklahoma Evidence Subcommittee's Note to Section 2704, Okla. Stat. tit. 12, § 2704 (West 2009). In this case, Harrison's voluntary statement that Blackwell was not negligent merely told the jury what result to reach. The Majority and I agree: "No witness should be permitted to give his opinion directly . . . that a person was negligent or not negligent." General Supply Co. v. Virgil D. Goucher and Bud Stevens d/b/a Bar S Trucking, No. 95,415, slip op. at 6, (Okla. Civ. App. May 28, 2002) (emphasis in original) (citing Gabus, ¶ 16, n.2, 678 P.2d at 255, quoting Grismore v. Consol. Prods., 5 N.W.2d 646, 663 (Iowa 1942) with approval).

B. Thomson's Citation Testimony

¶21 Thomson was the Norman police officer who investigated the accident. Although Thomson was listed as a fact witness by both parties in the pretrial conference order, he was called by Blackwell. During direct examination, Thomson testified regarding his education, training and experience in automobile accident investigation as a member of Norman's Collision Investigation and Response Team. He described what he did to investigate the accident involving Moore and Blackwell. He identified photographs of the accident scene and a diagram he prepared from which he described the accident scene for the jury, the conditions on the night of the accident, the length of skid marks, and the location of Moore at the point of impact. He relayed what he had learned from witnesses about how the accident occurred. He testified that the posted maximum speed on the road was fifty miles per hour and that there was a City ordinance in effect requiring pedestrians to walk facing oncoming traffic. He then testified that, based on the information he had obtained, the boys were not in the location required by the ordinance at the time of the accident. All of this testimony was provided without objection from Moore's counsel, is not challenged in this appeal and was properly admitted.

¶22 At the conclusion of Thomson's direct examination, counsel for Blackwell asked to approach the bench, where the following exchange took place:

MR. HARPER: Judge, I do believe he qualifies to the jury as to opinions as an expert due to his education and training. And I would like to ask him: Does he find any fault in Mr. Blackwell's driving? I will ask that only with your permission. He is a police officer and not designated as an expert, but I do believe under his testimony, he does qualify to answer that question.

MR. SMITH: My objection will be back to Gabus v. Harvey that says that an investigating officer or accident reconstructionist cannot give an opinion as to fault or argue facts, which suggest fault. I know your previous ruling, but I'm renewing that objection.

THE COURT: I understand. You may ask the question, sir.

Although Thomson was originally tendered as a fact witness, he was offered as an expert at this point without objection from Moore. From Thomson's testimony, it appears that he had sufficient additional training and experience in accident investigation to be qualified as an expert in that field pursuant to the requirements set out in Christian, 2003 OK 10, 65 P.3d 591, satisfying the first prong of section 2702. Consequently, like Harrison's expert testimony, the admissibility of Thomson's testimony as an expert is determined by the second prong of section 2702.

¶23 However, and unlike Harrison who was asked his opinion about the cause of the accident, the question put to Thomson solicited his opinion about who was at fault. I understand the Majority's concern that a jury might equate "fault" and "negligence." However, the jury in this case was properly instructed regarding the law of negligence and the weight to be given the testimony of expert witnesses. Therefore, I agree with this Court's statement in General Supply Co. v. Virgil D. Goucher and Bud Stevens d/b/a Bar S Trucking, No. 95,415, slip op. at 6, (Okla. Civ. App. May 28, 2002) (affirming a judgment favorable to the defendant despite testimony from a Highway Patrol trooper regarding the unsafe driving of the plaintiff's driver): "It is the jury that finally decides what was safe, unsafe, or whether an action or inaction was the cause of the collision."

¶24 Nonetheless, to the extent the district court erred in overruling Moore's objection to the question posed, the record when viewed in its entirety mitigates that error, in my view. First, Thomson consistently testified on direct and cross-examination that he was not testifying to who was at fault and when asked by Blackwell's counsel if he found any "'fault,' on Mr. Blackwell," Thomson did not answer that question.

Q: Officer Thomson, after you completed your investigation using your background and experience, did you find any type of, as you call it, "fault," on Mr. Blackwell?
A. Well, again, as I say, I have always been trained not to determine fault. As far as Mr. Blackwell goes, I determined that there was nothing for me to be able to site [sic] him for.

Only when pressed on the issue by Moore's counsel as to whether in his opinion Blackwell was "fault-free," did Thomson use the word "fault."

Q. So is it your testimony that Mr. Moore is fault-free?
A. I'm not saying fault on anybody. I'm just assessing who might have been most at cause in the accident -
Q. Okay.
A. - and due to the fact that Mr. Moore, from my information, went over to the center of the roadway instead of to the edge of the roadway, I would lend more credence at him being more at fault in the accident or more responsible - .

¶25 Second, Thomson's use of the word "fault" at this point is capable of being interpreted as a misstatement which Thomson immediately corrected with the language "or more responsible." The district court, with the benefit of observing Thomson during this testimony, concluded the following day that "my recollection yesterday is [Thomson] would not determine fault for either one of the parties from his testimony." "[T]he credibility of witnesses and effect and weight to be given to conflicting testimony are questions of fact for the trier of fact, either the court or jury, and are not questions of law for the Supreme Court on appeal." Loftis v. Collins, 1966 OK 94, ¶ 11, 415 P.2d 927, 929.

¶26 Nonetheless, Thomson's voluntary testimony that he "determined that there was nothing to be able to site [sic] [Blackwell] for," was improper. Generally, evidence that one was or was not issued a citation in conjunction with an accident is not admissible. See 8 Am. Jur.2d, Automobiles & Highway Traffic § 1157 (2007).[3] This testimony is objectionable because it is in the form of a legal conclusion, as was the objectionable testimony in Gabus that the pedestrian "failed to yield the right-of-way." 2 Leo H. Whinery, Oklahoma Evidence, Commentary on the Law of Evidence § 25.13 (1994).

III. Fundamental Error

¶27 Even though Harrison should not have testified that Blackwell was not negligent and Thomson should not have testified that he did not issue Blackwell a citation, the issue in this appeal is whether that improper testimony requires reversal of the judgment in favor of Blackwell. "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." 12 O.S.2011 § 78. "Fundamental error compromises the integrity of the proceeding to such a degree that the error has a substantial effect on the rights of one or more of the parties. See 12 O.S.1991 § 2104." Sullivan v. Forty Second West Corp., 1998 OK 48, ¶ 7, 961 P.2d 801, 803. "A case will not be reversed for error in the admission or rejection of evidence unless it appears, upon examination of the entire record, that such error resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right." Allen v. Oklahoma State Bank of Enid, 1928 OK 577, ¶ 0, 270 P. 838 (syllabus 3). "[T]he settled rule is that only those errors in admission or rejection of evidence which resulted in miscarriage of justice or constitute substantial violation of some constitutional or statutory right require reversal of a cause by this Court." Davon, 1970 OK 51, ¶ 16, 467 P.2d at 474.

A. Thomson's Citation Testimony

¶28 Determining any prejudicial effect of Thomson's testimony requires a review of the entire record. First, Moore objected to one question and answer at the end of twenty pages of Thomson's direct testimony. The remainder of Thomson's testimony that Moore finds objectionable was elicited on cross-examination. To the extent this testimony would be prohibited pursuant to Oklahoma law, Moore is solely responsible for the error. "A party on appeal is not permitted to secure a reversal of a judgment based on invited error." State ex rel. Oklahoma Bar Ass'n v. Perkins, 1988 OK 65, ¶ 17, 757 P.2d 825, 830.

¶29 Second, despite the fact that Thomson should not have testified that he did not issue Blackwell a citation, Moore did not request to have that testimony stricken, even though the issue of citations had not been previously introduced or discussed and was not solicited by the question. In addition, Moore did not file a motion for directed verdict or a motion for new trial to address this error. "Trial courts are not traditionally reversed for error unless the error was called to their attention at a time when they themselves could reasonably be expected to correct it." Gaines v. Sun Refinery & Mktg., 1990 OK 33, ¶ 20, 790 P.2d 1073, 1080 (overruled on other grounds by Davis v. B.F. Goodrich, 1992 OK 14, 826 P.2d 587).

¶30 Third, Moore has not shown that the jury's verdict would have been in his favor if Thomson's "citation testimony" had been excluded. See Montgomery v. Murray, 1970 OK 226, 481 P.2d 755. Consequently, I do not find that it was "highly probable" that "the jury was unduly influenced" by Thomson's testimony about citations. Gabus, ¶ 28, 678 P.2d at 257. Therefore, I cannot conclude that the admission of Thomson's citation testimony, when viewed in its entirety along with "the accumulation of eyewitness testimony and photographic evidence . . . was a clear abuse of discretion." Madden v. Board of County Comm'rs of Hughes County, No. 97,832, slip op. at 14, (Okla. Civ. App. Feb. 24, 2004) (emphasis in original) (affirming judgment in favor of driver despite testimony from the investigating officer that the driver could not have avoided the accident because of a washed out portion of the county road). With respect to the citation testimony provided by Thomson, I find no error requiring reversal of the judgment in favor of Blackwell.

B. Harrison's Negligence Testimony

¶31 Although I agree with the Majority that Harrison's voluntary statement that Blackwell was not negligent was improper, we review error in the admission of that testimony for fundamental error. First, Harrison was not asked if he thought Blackwell was negligent. Harrison was asked what he thought the cause of the accident was - two entirely different questions in my view. Second, although the district court should have stricken Harrison's statement based on Moore's continuing objection, Moore bears some responsibility for failing to point out that Harrison did not answer the question that was asked or the difference between testimony about the cause of the accident and testimony about who was negligent. Ultimately, I find no basis on which to conclude that a different verdict would have been rendered if the challenged testimony had been excluded. See Montgomery v. Murray, 1970 OK 226, ¶ 20, 481 P.2d 755, 761 (reversing order granting plaintiff a new trial in an automobile collision case because there was nothing in the record to show the verdict would have been in plaintiff's favor if the objectionable evidence had been excluded). As stated by counsel for Moore in this case:

Q. And if I understand your opinion correctly, Mr. Blackwell was in a no-win situation that night. Would that be a fair summary?

A. Basically, I would say that's a fair summary.

The evidence in this record fully supports Harrison's opinion that Blackwell could not have avoided hitting Moore.

IV. Moore's Objection to the Remainder of Harrison's Testimony

¶32 Moore's objection to Harrison's testimony is not just limited to the statement about Blackwell's lack of negligence. Proposition I of Moore's appeal argues the district court "improperly allowed defendant's expert witnesses to testify on issues properly reserved for the jury." In substance, Harrison testified on direct examination that in his opinion Blackwell took evasive action when he saw Moore by applying his breaks and swerving to the left and that they collided across the centerline of the road because Moore crossed the centerline in an effort to avoid Blackwell's car. Harrison testified that after impact, Moore hit the windshield of Blackwell's car and traveled approximately 68 feet on the hood before Blackwell's car stopped and Moore was thrown off. He also testified that tire marks from Blackwell's swerve maneuver showed that maneuver began approximately 64 feet before the point of impact.

¶33 From these facts, Harrison testified that he was unable to determine the exact speed of Blackwell's vehicle at the time of impact but in his opinion the maximum speed would have been no more than 35 miles per hour. In part, he reached this conclusion based on the location of the damage to Blackwell's windshield and the severity of Moore's injuries. Based on the physical evidence and the calculations he made from that evidence, Harrison testified that in his opinion Blackwell could not have been traveling more than 40 miles an hour when he began the swerve maneuver. As a result, Harrison testified, Blackwell was approximately 100 to 150 feet from the boys when he would have first been able to see them, that he would have had only one and a half to two seconds to react as he did and that Blackwell's reaction time was "very, very good" and "above average." Harrison testified that the boys would have been able to see Blackwell's headlights from 1200 to 1500 feet away. Finally, Harrison stated that in his opinion Blackwell took appropriate action and the accident occurred because Moore jumped into the path of Blackwell's car. Harrison concluded his direct examination by stating his opinion that the accident would not have happened if Moore had gone the same way as the other boy or if Moore had just stood still when Blackwell swerved.

¶34 The basis for Moore's objection to Harrison's statement that he did not find Blackwell negligent is clear. The "specific ground" for his objection to the remainder of Harrison's testimony is somewhat illusive.

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and: 1. If the ruling is one admitting evidence, a timely objection . . . appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

12 O.S.2011 § 2104(A). As the Majority Opinion documents, Moore's objection to Harrison's testimony and the basis for his objection to Thomson's testimony was presented to and rejected by the district court on several occasions. However, the scope of Moore's objection evolved from the time it was originally made.

¶35 In his March 29, 2010, motion in limine, Moore sought to exclude all of Harrison's testimony. Harrison had been listed by Blackwell as an expert witness in accident reconstruction. The motion cited Gabus and Jackson v. Brown, 1961 OK 88, 361 P.2d 270,[4] as authority for the proposition that (1) the matters about which Harrison would testify were within the common knowledge of jurors; and (2) testimony by police officers is prejudicial and invades the province of the jury.[5] On January 13, 2011, Moore amended that motion and listed twenty-three "opinions" about which he anticipated Harrison would testify based on Harrison's recent deposition testimony.[6] Both motions argued:

Oklahoma law expressly prohibits a police officer or other expert from testifying and rendering an opinion regarding the wrongfulness or correctness of the parties' actions in connection with a vehicle collision, which of the parties was at fault or which acts of the parties contributed to the accident.

Although Moore's original motion argued that all of Harrison's testimony was inadmissible, his amended motion argued that only a portion of Harrison's testimony, i.e., the twenty-three "opinions," was inadmissible.

¶36 Many of the twenty-three "opinions" listed in the amended motion are not opinions, such as: the plaintiff was walking in the dark, on a dark road wearing dark clothes; plaintiff was walking with the traffic in defendant's lane; defendant's headlights were working properly; and defendant traveled approximately 68 feet from the point of impact until his vehicle stopped. The Majority and I agree that Harrison was permitted to testify regarding facts evident from the physical evidence.

¶37 As to Harrison's opinion testimony, Moore's amended motion concedes that Harrison could testify about what he "saw, measured or calculated." Moore's Reply to Blackwell's response to his motion in limine states: "Terry Harrison will testify concerning speed of defendant's vehicle which is admissible. Plaintiffs [sic] only seek to exclude his testimony outside of the speed calculations."[7] And, in a motion to "clarify" the order overruling his motion in limine, Moore argued that Harrison "should be limited to scientific evidence only, such as speed, skid marks and calculations. Items which are beyond the common understanding of the jury."

¶38 At the beginning of trial, Moore's counsel argued that he needed a "running objection to [Harrison's] testimony based on Gabus v. Harvey to every question that is asked and answered by that expert that is nonscientific." Counsel explained that he needed the objection "to preserve my objection for appeal" of the "Motion in Limine that you overruled on Friday." Counsel was also concerned that repeated objections would be "jumping and interfering in front of the jury." The district court deferred ruling until Harrison was called to testify. From the exchange the following day when Harrison was called to testify, it is clear that Counsel for Blackwell and the trial judge understood that Moore was requesting a continuing objection to questions involving Harrison's opinion about the cause of the accident rather than his background and qualifications as an expert.

¶39 Counsel for Moore agreed and continued to argue, based on Gabus, "that an investigating police officer or an accident reconstructionist cannot give an opinion as to who was at fault, who was not at fault, or argue facts which would suggest fault." In this exchange, Moore did not reurge his second objection based on Gabus, that even if relevant, testimony from a police officer or accident reconstructionist is "overly prejudicial and invades the province of the jury." He did add that Harrison's testimony was cumulative because Thomson had already been allowed to testify that Blackwell "was fault-free in this crash." The district court granted Moore a continuing objection as to Harrison's "expert opinion evidence" regarding "causation and negligence." Fairly interpreted on the basis of this record, that continuing objection was to any testimony by Harrison (1) about the cause of the accident, (2) about which party was at fault, (3) about which party was negligent and, (4) that was duplicative to Thomson's testimony that Blackwell was, as Moore put it, "fault-free."

¶40 However, Moore's brief in chief is not limited to these issues. First, he argues, and for the first time, that permitting Thomson to be qualified as an expert "was a surprise to the Plaintiff, to say the least." The only objection Moore made to the trial judge when Thomson was tendered as an expert was "back to Gabus v. Harvey that says an investigating officer or an accident reconstructionst cannot give an opinion as to fault or argue facts, which would suggest fault." Generally, this Court does not reach issues the appealing party fails to raise in the trial court. Bottles v. State ex rel. Oklahoma State Bd. of Med. Licensure and Supervision, 1996 OK 59, ¶ 4, 917 P.2d 471, 472. In addition to failing to preserve this issue for appeal, Moore has failed to demonstrate the nature of the "surprise." Thomson was listed as a witness Moore intended to call. Further, cross-examination shows that Thomson and Moore's counsel met in Moore's counsel's office prior to the trial.

¶41 Second, Moore argues in his brief in chief that permitting both Harrison and Thomson to opine that Blackwell was not negligent, but that Moore was negligent, constituted cumulative evidence and "piling on." No authority is cited in support of this proposition. Issues not supported by argument and authority in the party's brief may be deemed waived. In re Estate of Walker v. Walker, 1985 OK 2, ¶ 1, 695 P.2d 1; Okla. Sup. Ct. R. 1.11(k)(1), 12 O.S.2011, ch. 15, app. 1.

¶42 Third, in this appeal Moore attempts to revive his motion in limine argument that the testimony of these experts was prejudicial and put the "'stamp of expertise' on an issue the jury is fully capable to decide - in other words, invading the province of the jury." That was not an argument presented to the trial judge when Moore was granted his continuing objection.

¶43 Fourth, Moore argues that the experts relied solely on the statements of witnesses and that their opinions were not based on any independent scientific evidence. "NO SCIENTIFIC EVIDENCE was needed to defend this case, therefore, this testimony does not assist the jury in understanding the facts of this case." It is difficult to take this argument seriously when Moore concedes that at least some of Harrison's testimony was "beyond the common understanding of the jury." Nonetheless, neither the record nor the exchange with the trial judge when requesting a continuing objection support this contention. Moore justifies this argument by pointing out that he never argued that Blackwell was speeding. However, the central theme of Moore's case was that Blackwell was "driving too fast for the lighting conditions."

¶44 Harrison's opinion as to the cause of this accident, if believed by the jury, established that given the lighting conditions and speed of Blackwell's car he did not have enough time to avoid hitting Moore unless Moore had stood still or had gone in the same direction as the other boy. Clearly, Harrison's opinion was based on what he "saw, measured [and] calculated." Just as clearly, Harrison relied on the calculations he made utilizing his "specialized knowledge" to estimate the speed of Blackwell's car, the point of impact and the time and distance Blackwell had from the time he saw the boys to the point of impact. From his arguments to the district court it is unclear whether Moore finds this testimony objectionable because these "facts . . . would suggest fault."

¶45 Nonetheless, the admissibility of opinion testimony regarding the speed of a vehicle was determined long before section 2702 was adopted. "Opinion evidence of a duly qualified expert as to the speed of a motor vehicle, traveling upon a highway, based on skid marks on the highway and other physical facts, is admissible." Continental Oil Co. v. Elias, 1956 OK 343, ¶ 0, 307 P.2d 849, 851 (syllabus 4). Accord, Covel, 2012 OK 5, 272 P.3d 705. Further, "[o]pinion testimony concerning the point of impact is proper if the expert witness first details the facts upon which his conclusion is based." Gabus, 1984 OK 4, ¶ 4, 678 P.2d at 258 (Hodges, J., dissenting). That was also the law in Oklahoma even prior to the adoption of section 2702. See Graves v. Graves, 1970 OK 177, 475 P.2d 171 (finding no error in overruling objection to investigating officer's opinion about the point of impact).

¶46 Despite Moore's objection, I do not understand the Majority Opinion as holding this kind of testimony about speed and point of impact, for example, was improper. But Harrison also testified that given the time, distance and speed in this case Blackwell was unable to avoid hitting Moore unless Moore stood still or went the same way as the other boy. From my interpretation of Moore's "causation and negligence" objection, it is this last testimony that he finds particularly objectionable. The Majority agrees. I do not. In my view, it was "permissible for [Harrison] to take the further step of suggesting the inference which should be drawn from applying [his] specialized knowledge to the facts." Oklahoma Evidence Subcommittee's Note to Section 2702, Okla. Stat. tit. 12, § 2702 (West 2009).

¶47 Even if Gabus has not been abrogated, this case, in my view, is "arguably more complex" than Gabus. Cf., Madden v. Board of County Comm'rs of Hughes County, No. 97,832, slip op. at 14, (Okla. Civ. App. Feb. 24, 2004) (affirming judgment in favor of driver despite testimony from the investigating officer that the driver could not have avoided the accident because of a washed out portion of the county road). Further, Moore argued Blackwell did not brake but accelerated; Blackwell argued he immediately braked and swerved to the left. Moore argued that although Blackwell was not speeding, he was driving "too fast for the lighting conditions." Therefore, the evidence about what Blackwell did or did not do when he saw the boys or should or should not have done was disputed. Cf., Gabus, 1984 OK 4, ¶ 4, 678 P.2d at 258 (Hodges, J., dissenting) ("[T]he [expert witness] evidence was helpful to the jury on the issue of causation because there was contradictory testimony . . . .").

¶48 And, even assuming it accepted all of Harrison's testimony on causation, the jury still had to determine whether Blackwell's conduct conformed to the standard of care in order to resolve the ultimate issue of who was negligent. Moore consistently argued that even though Blackwell was not speeding, he should have been driving even slower because it was dark. Harrison did not testify about what speed he thought was appropriate for the conditions. He did not testify about the applicable standard of care or whether Blackwell conformed to that standard. He only testified that given the circumstances of the case, Blackwell took appropriate action but that if he had been driving slower he could have avoided the accident. Harrison did not tell the jury how to decide the case except with respect to the one statement he made about Blackwell's lack of negligence. In my view, the vast majority of Harrison's testimony tended "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2011 § 2401 (defining relevant evidence). As Daubert and Christian confirm: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code." 12 O.S.2011 § 2402. Consequently, Harrison's testimony about the cause of this accident and the acts of the parties that did or did not contribute to that cause was admissible, in my view. I find no basis on which to exclude this evidence other than Gabus.

V. Conclusion

¶49 Finally, I share the Majority's concern about the increased litigation expense of regularly employing expert witnesses and the "vice of . . . encouraging a contest by experts rather than a trial by witnesses." Gabus, 1984 OK 4, ¶ 25, 678 P.2d at 257. However, the law regarding the admissibility of expert witness testimony has changed since Gabus was decided, and the "vice" of concern to the Court in Gabus almost twenty years ago is now a common aspect of litigation. Therefore, I respectfully dissent to the Majority's reversal and would affirm the judgment in favor of Blackwell.

FOOTNOTES

[1] I agree with the Majority that the district court did not err with respect to the impeachment issue and concur in that portion of the Majority Opinion. Finally, I would reach the jury instruction issue deferred by the Majority, and finding no error with respect to the jury instructions, I would affirm the judgment in favor of Blackwell.

[2] The ultimate issue in any tort case is liability. Most often, liability is determined by which party was negligent. In some circumstances, however, proof of liability may require more than proof of negligence. Thompson v. Presbyterian Hosp., Inc., 1982 OK 87, ¶ 12, 652 P.2d 260, 263-64: "Negligence is not actionable unless it proximately causes the harm for which liability is sought to be imposed." Pepsi-Cola Bottling Co. of Tulsa, Okla. v. Von Brady, 1963 OK 236, ¶ 21, 386 P.2d 993, 997: "[A]n injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable." Sturdevant v. Kent, 1958 OK 48, ¶ 3, 322 P.2d 408, 409: "If the negligence complained of merely furnished a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury." None of those circumstances are present in this case.

[3] In Gabus, the investigating officer testified not only regarding who failed to yield the right-of-way, but also that "there was no charges filed." Gabus, 1984 OK 4, ¶ 7 n.1, 678 P.2d at 254. The Gabus Court did not address the propriety of that testimony or any prejudicial effect from its admission without objection.

[4] The Jackson holding is stated in the Court's syllabus:

1. An expert witness may testify only as to the physical facts disclosed in course of his investigation of an automobile collision. He may not state his opinion as to the cause of the collision.

2. In a negligence action growing out of a motor vehicle collision, it was reversible error to admit, over timely objection of the plaintiff, conclusions of investigating officer, that the plaintiff was making an improper turn at the time of the collision.

Jackson, 1961 OK 88, ¶ 0, 361 P.2d at 270 (syllabus 1). First, as Moore notes, Jackson was decided before the Evidence Code was enacted. Second, its value is further questionable because the Court found that the officer gave his opinion on an ultimate issue in the case: "It is thus clear that the opinion evidence elicited from the officer purports and contemplates to decide the very cause of the collision - an ultimate issue the jury is sworn to determine." Id. ¶ 12, 361 P.2d at 272. As the Gabus Court recognized, section 2704 now makes clear that expert testimony is not objectionable because it embraces an ultimate issue the jury is to decide in the case.

[5] Although Harrison was listed and testified as an expert witness, he was also employed as a police officer during the relevant time. The Gabus Court, in holding that the investigating officer's testimony was prejudicial, focused on his position as a police officer citing Maben v. Lee, 1953 OK 139, ¶ 11, 260 P.2d 1064, 1067: "Such testimony given by a witness occupying an official position, assuredly must have greatly impressed the jury, particularly since the average laymen undoubtedly would be inclined to place the stamp of authenticity upon testimony by such an officer." On this point, I find both Gabus and Maben distinguishable. Harrison was not the investigating officer in this case. The fact that he was employed by the Oklahoma City Police Department is coincidental. It was a fact perhaps relevant to his qualifications as an expert. But Harrison was not acting in an official capacity in this case, a fact clearly established by Moore's counsel. Harrison was cross-examined in detail regarding who paid him for his work on this case, the number of times he had been hired as an expert witness by Blackwell's counsel in other cases and the number of times he had been hired as an expert witness by defendants as opposed to plaintiffs. He was not cross-examined regarding his qualifications as an expert in accident reconstruction, the scientific methods he used, or the facts he relied on to form the opinions about which he testified. In my view, the Gabus rationale for determining the prejudicial effect of an investigating officer's testimony is inapplicable to the testimony by Harrison.

[6] "Therefore the following opinions offered by defendant's expert, Terry Harrison, should be excluded:

1. "At the time of this accident the plaintiffs were walking in the dark, on a dark road, wearing dark clothes."
2. "The plaintiff and his friend was walking with traffic in the lane of defendant."
3. "The defendant was operating his vehicle in a proper manner prior to and at the time of this accident."
4. "The defendant was operating his vehicle in a proper manner prior to and at the time of this accident."
5. "The defendant saw the plaintiffs in the roadway and was too close to try to avoid."
6. "The defendant swerved to the left believing that any nature person walking down the middle of his lane would go to the right."
7. "The defendant had no way of knowing that the pedestrians would go in the opposite directions."
8. "The defendant was not speeding."
9. "The plaintiff should be walking against traffic."
10. "If the plaintiff would have been walking against traffic he would have had unlimited vision to see the defendant approaching."
11. "Pedestrians must yield to the traffic which they failed to do."
12. "The defendant is not expected to have to observe to young boys walking in his lane of traffic in the dark."
13. "The defendant's lights were working properly as the plaintiff and boys are invisible to the lights that aluminate [sic] against a dark back ground."
14. "If the plaintiff had went to the right there would have of been no accident."
15. "The plaintiff's father is also at fault as to properly instruct his son how to walk properly at night and against traffic."
16. "Due to the breakage area on the windshield it shows the estimated speed at impact at approximately 25 - 35 mph."
17. "Mr. Harrison will testify that no fault exist upon the defendant."
18. "The defendant traveled approximately 72 feet from the point of impact until the vehicle totally stopped."
19. "if the defendant had total lock-up after impact the maximum speed hewould have been traveling would have been 38 mph at impact. However, the defendant did not have total lock-up thus his speed at contact would have been 35 mph or less."
20. "The lights along I-35 interfere with the eyesight of the defendant."
21. "The kids available sight of the defendant's headlights are unlimited except for the terrain."
22. "If plaintiff had just walked straight or went right then the defendant would have missed him."
23. "From the aerial map, I have placed Mr. Blackwell's vehicle at four different locations on the access road, as well as circles of the children involved. . . . Mr. Blackwell observed the young men appropriately for the time of night and the lighting in the area."

[7] The trial judge determined this Reply was filed out of time and did not consider it when denying Moore's motion the Friday before trial.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Criminal Appeals Cases Cite
Name
Level 1990 OK CR 5, 788 P.2d 387, MOORE v. STATE
Discussed 1993 OK CR 41, 862 P.2d 1273, HOOKS v. STATE
Discussed
Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2012 OK CIV APP 99, 288 P.3d 259, ISLE v. BRADY
Discussed 2012 OK CIV APP 109, 292 P.3d 41, BREWER v. MURRAY
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1988 OK 65, 757 P.2d 825, State ex rel. Oklahoma Bar Ass'n v. Perkins
Discussed 1990 OK 33, 790 P.2d 1073, 61 OBJ 870, Gaines v. Sun Refinery and Marketing
Discussed 1992 OK 14, 826 P.2d 587, 63 OBJ 369, Davis v. B.F. Goodrich
Discussed 1953 OK 139, 260 P.2d 1064, MABEN v. LEE
Discussed at Length 1956 OK 343, 307 P.2d 849, CONTINENTAL OIL COMPANY v. ELIAS
Discussed 1958 OK 48, 322 P.2d 408, STURDEVANT v. KENT
Discussed 1961 OK 88, 361 P.2d 270, JACKSON v. BROWN
Discussed at Length 1963 OK 236, 386 P.2d 993, PEPSI-COLA BOTTLING CO OF TULSA, OKL. v. VON BRADY
Discussed 2002 OK 24, 45 P.3d 86, JOHNSON v. FORD MOTOR CO.
Discussed 1966 OK 94, 415 P.2d 927, LOFTIS v. COLLINS
Discussed 1995 OK 41, 894 P.2d 1116, 66 OBJ 1422, Crussel v. Kirk
Discussed 1970 OK 51, 467 P.2d 470, DAVON DRILLING COMPANY v. GINDER
Discussed at Length 1970 OK 177, 475 P.2d 171, GRAVES v. GRAVES
Discussed 1970 OK 226, 481 P.2d 755, MONTGOMERY v. MURRAY
Discussed at Length 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed at Length 1996 OK 59, 917 P.2d 471, 67 OBJ 1598, Bottles v. State ex rel. Okla. State Bd. of Medical Licensure
Discussed 2007 OK 76, 171 P.3d 890, SPENCER v. OKLAHOMA GAS & ELECTRIC COMPANY
Discussed 2012 OK 5, 272 P.3d 705, COVEL v. RODRIGUEZ
Discussed at Length 1928 OK 577, 270 P. 838, 133 Okla. 14, ALLEN v. OKLAHOMA STATE BANK of ENID
Discussed 1982 OK 87, 652 P.2d 260, Thompson v. Presbyterian Hosp., Inc.
Discussed 1998 OK 48, 961 P.2d 801, 69 OBJ 2135, SULLIVAN v. FORTY SECOND WEST CORP.
Discussed 1998 OK 53, 967 P.2d 1180, 69 OBJ 2341, HOLM-WADDLE v. HAWLEY
Discussed 1984 OK 4, 678 P.2d 253, Gabus v. Harvey
Discussed at Length 1985 OK 2, 695 P.2d 1, Estate of Walker, Matter of
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 78, Court to Disregard Insignificant Errors
Cited 12 O.S. 2104, Rulings on Evidence
Discussed at Length 12 O.S. 2401, Relevant Evidence Defined
Cited 12 O.S. 2402, Relevant Evidence Generally Admissible - Irrelevant Evidence Inadmissible
Cited 12 O.S. 2411, Liability Insurance
Cited 12 O.S. 2702, Testimony by Experts
Discussed at Length 12 O.S. 2704, Opinion on Ultimate Issue
Discussed