MISSOURI, KANSAS & OKLAHOMA TRANSIT LINES, INC., a Nevada Corporation, and C. G. Arnold, Plaintiffs in Error,

v.

John M. JACKSON, Defendant in Error.

No. 41564.

Supreme Court of Oklahoma.

Feb. 27, 1968.

behind, failed to stop, and collided with it from the rear.

Thereafter, plaintiff instituted this action for damages against said bus company and its said driver, hereinafter referred to by name and/or as "defendants", alleging, in general substance, that the collision was caused by the negligence of the defendants in not keeping the bus under such control as to avoid the rear-end collision. The total of $52,129.96 plaintiff sought, as damages, was itemized in his petition as follows:

"1. For disability and loss of earning capacity, pain and suffering, both past, present and future $50,000.00

"2. Hospital and medical care (approximately) 1500.00

"3. Damage to automobile 629.96."

Defendants' answer in the case consisted of a qualified general denial, and a plea of unavoidable casualty.

At the trial, the testimony of plaintiff's attending physician, Dr. M, showed his bill for medical services to plaintiff was $1229.-77. There was also evidence introduced on behalf of plaintiff contemplated to show that the damages to his Buick from the collision amounted to $629.96. Plaintiff testified, among other things, that the accident occurred about 5:30 P. M., when it "was getting dusk"; that it had been snowing that day and there were some slick and icy spots on Tulsa's streets; that, just previous to the collision, he had been driving his auto south on Harvard Street, and had stopped it behind another car that was stopped in the traffic lane running parallel to said Street's western curb, on account of the electric traffic light at said Street's intersection with 31st Street turning red, facing Harvard's north and southbound traffic; that he had not been stopped more than eight or ten seconds, with his eyes fixed on the traffic light ahead, when his auto was jolted from the rear by an impact that knocked it into the auto ahead of him, which latter rolled five or six feet into the intersection.

Best, Sharp, Thomas & Glass, Joseph M. Best, Joseph A. Sharp, Tulsa, for plaintiffs in error.

Rucker & Tabor, B. W. Tabor, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Defendant in error, hereinafter referred to as "plaintiff", was injured and his 1959-model Buick sedan damaged, while stopped in obedience to a traffic light at a Tulsa street intersection, when a bus, owned and operated by the plaintiff in error, Missouri, Kansas & Oklahoma Transit Lines, Inc., (referred to for brevity as "M. K. & O.") and driven by said Company's employee, the plaintiff in error, C. G. Arnold, approached plaintiff's auto from

As a witness for the defendants, the bus driver, Arnold, testified, among other things, that his bus was traveling only 10 to 15 miles per hour as it approached the intersection behind plaintiff's car, in heavy traffic; that he had an "awful big load of passengers" in the bus; that he applied his brakes, and also steered his front wheels into the curb, but still "just kind of slid" into the rear of the plaintiff's car, with an impact so slight that none of the passengers standing in the aisle of his bus was knocked down.

Mr. Orville Spencer, one of the bus's passengers testifying for defendants, stated that the bus was not going more than 15 miles per hour as it approached the intersection. He also gave testimony indicating that, as he sat near the front of the bus, he had been observing the bus's progress several minutes before the collision. One excerpt from his re-direct examination appears in the record as follows:

"Q. (By Mr. Best) Mr. Spencer, would I be correct, sir, in assuming that all that you have been attempting to tell the Court and jury here is something that took place in a matter of seconds?

"A. Yes, sir, it is.

"Q. And what you observed, and I believe you stated that the bus was somewhere around seventy-five to a hundred feet behind the first car at the time the lights first changed or as the bus was coming along?

"A. As it was coming up to the intersection. .

"Q. All right, sir. And do you know of anything else that Mr. Arnold could have done here to avoid this—

"MR. TABOR: Just a minute.

"THE COURT: That would invade the province of the jury, counselor. The objection will be sustained as to the form of the question."

Upon submission of the case to the jury under court's instructions, a general verdict was returned in plaintiff's favor for the lump sum of $1665.00; and judgment was thereafter entered accordingly. Thereafter, a motion for new trial, filed by plaintiff, was sustained on the ground that the amount of the verdict was inadequate, because it was less than plaintiff's medical expenses and auto damage, and did not allow him any compensation for pain and suffering. At the time the trial court made its ruling on plaintiff's said motion, he expressed the opinion that the above quoted question defense counsel asked the bus passenger "could have affected the inadequate verdict * * *".

From the trial court's order and/or judgment sustaining plaintiff's motion for a new trial, defendants have perfected the present appeal.

■ One of defendants' arguments for reversal is, in substance, that the asking of the quoted question could not have had the prejudicial effect attributed to it by the trial judge, because the question had no relationship whatsoever to any issue in the case, other than that of defendants' liability; and, on that issue, the jury found *for* plaintiff. On the other hand, plaintiff contends that since the amount of damages allowed him by the jury's verdict was not even enough to pay his bills, "it must follow that the conduct of defendants' counsel * * * (in asking the) improper and prejudicial question affected the jury's verdict", citing Burkett v. Moran, Okl., 410 P.2d 876.

■■ We may assume that the subject question asked the witness Spencer was improper, but then the issue becomes: Does it appear to have been prejudicial, and therefore ground for a new trial under our harmless error statute, Tit. 12 O.S. 1961, § 78? If this question is answered in the negative, then the trial court erred and abused his proper, judicial discretion in entering the order herein appealed from. Salyer v. Central National Bank, Okl., 312 P.2d 458.

Here, we have a different kind of verdict than those involved in Hallford v. Schumacher, Okl., 323 P.2d 989, and Burkett v. Moran, supra, which type of verdict, we noted in the latter case, caused the record to "affirmatively" show "that no award for pain and suffering was made"; and then we said: "In the absence of the itemized statement (included in the verdict) it could not be conclusively said, under applicable law, that an award for such element of damages was not included in the verdict."

■ Here, the same thing can be said, of the general verdict before us, that was quoted from Bready v. Tipton, Okl., 407 P.2d 194, in Kansas City Southern Ry. Co. v. Johnston, Okl., 429 P.2d 720, 731: "Since the verdict is general * * * (it) furnishes no clue as to the size of its allowance for any of plaintiff's alleged damages * * *." (Notice what we said in St. Louis, San Francisco Ry. Co. v. Thompkins, Okl., 409 P.2d 1, 6, to the same effect). This being true, how can plaintiff say, with any support from the record, that this verdict allowed him nothing for his pain and suffering, or how can he assume that it allowed him a particular amount for any one item of his alleged damages?

■ As to the amounts of damages plaintiff claimed for medical expenses, and for repairs to his Buick automobile, the record discloses that defendants not only formally disputed these by their answer, but that, at the trial, they challenged both the size, and necessity, of Dr. M's medical bill (which, in the total amount of $1229.77, was the largest single item of medical expense that the evidence tended to show plaintiff had incurred) and the Chick Norton Buick Company's estimate of the expense of repairing plaintiff's automobile. From a careful examination of Dr. M's testimony as to the medical services he had furnished plaintiff, reasonable men might well differ in their conclusions as to whether or not all of his bill was for treatment of physical conditions and symptoms, proved to have resulted directly from the collision. Therefore, the fact that the jury's award was for a lesser amount than the combination of Dr. M's total bill, and the Buick Company's estimate, constitutes no affirmative showing that the verdict was inherently erroneous. The analysis and weighing of the evidence with reference to the *necessary* expense of alleviating the injuries to plaintiff's auto, as well as the *necessary* expense of alleviating the injuries to his body, *due directly to the collision,* were the prerogative of the jury under the evidence in this case, just as it is the jury's prerogative to determine the veracity of witnesses, and the credibility of their testimony, when these are amenable to a difference of opinion.

Since the question propounded to the witness, Spencer, pertains neither directly, nor by inference or innuendo, to the issue of the amount of plaintiff's damages, and a thorough examination of the record discloses no affirmative showing, or anything to make it appear likely, or probable, that the jury's verdict would have been any different, if the subject question had not been asked, we can only conclude that the trial judge sustained plaintiff's motion for a new trial on the ground of a harmless error, or because the verdict did not conform to his personal idea of what would be just compensation for plaintiff's detriment. As to the latter, we need not repeat what we said in Aldridge v. Patterson, Okl., 276 P.2d 202, and have so often heretofore reiterated.

It therefore follows that the trial court erred and abused his discretion in ordering a new trial by the judgment appealed from. Accordingly, said judgment is hereby reversed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY, LAVENDER and McINERNEY, JJ., concur.