**Roy D. MONTGOMERY, Plaintiff in Error,**

v.

**Beverly Ann MURRAY, Defendant in Error.**

**No. 42553.**

Supreme Court of Oklahoma.

Dec. 8, 1970.

As Amended March 15, 1971.

Rehearing Denied March 16, 1971.

Clarence P. Green, Oklahoma City, for plaintiff in error.

Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for defendant in error.

BLACKBIRD, Justice:

The broad issue in this appeal is whether the trial court's order sustaining a motion for new trial in a rear-end automobile collision case should be affirmed or reversed.

The collision occurred when an automobile driven by defendant in error, hereinafter referred to as "plaintiff", stopped, facing north, behind two other automobiles facing in the same direction, on Oklahoma City's South May Avenue, where it intersects with a cross-street extending in an easterly and westerly direction. While plaintiff's car was thus stopped, waiting in line to move ahead, an automobile driven by plaintiff in error, hereinafter referred to as "defendant", traveling in the same direction behind it, struck it in the rear.

Thereafter, plaintiff instituted the present action for the recovery of $7,500.00 in damages against defendant on account of personal injuries she suffered in the collision, allegedly caused by defendant's negligence in the operation of his automobile, sometimes hereinafter referred to as "D car". In addition to his alleged negligence in other respects, plaintiff's petition charged defendant driver with negligence in failing to use his car's braking and steering mechanism in such a way as to avoid the collision. According to plaintiff's pleading, the collision's impact threw her in and about the interior of her car (sometimes hereinafter referred to as "P car") and, as a result, the "muscles, ten-

dons, ligaments, soft tissues, bony structures, blood vessels and nerve centers" in her "entire spine, back, neck and shoulders were pulled, strained, torn, traumatized, and their functions impaired." Plaintiff further alleged that she "suffered a blow to her left elbow, causing injury to the muscles, tendons, ligaments and bony structures" thereof.

In his answer, defendant admitted his car collided with the rear end of P car, but denied that the collision was due to his negligence. He alleged it was an unavoidable accident, due to a sudden failure of his car's braking mechanism, resulting in his being confronted with a sudden emergency, without fault on his part.

After the filing of a reply, in which plaintiff denied the allegations of defendant's answer, the case was tried to a jury.

At the trial, Dr. S, a general physician, who testified he had been treating plaintiff professionally for almost two years before the collision, further testified that plaintiff came to him for treatment of her injuries from the collision, approximately a week after it occurred. According to Dr. S's testimony, plaintiff had some of the same symptoms commonly associated with whiplash injuries including a slight straightening of the normal curvature of the spine, which he claimed was revealed by the x-ray pictures he had taken the next day, and which were apparently introduced in evidence as plaintiff's Exhibits Numbered 1 and 2. Dr. S further testified that he treated plaintiff periodically for about five months after the collision, and, though her condition had definitely improved, she was still under his care. He further testified that his treatment of plaintiff consisted of administering heat, and muscle relaxants, and pain medication, together with prescribing rest of the neck muscles "as much as possible" and "use of a special pillow at night to try to keep any strain at all off any of the neck muscles", so they would relax. Dr. S gave an affirmative answer when plaintiff's counsel

asked him if her injury was disabling, and further testified that it prevented her from performing the duties of a housewife with three children "for at least the first five or six months of the injury."

With obvious reference to the left elbow injury described in the hereinbefore quoted allegation of her petition, Dr. S also testified that plaintiff did not apprise him of the bruise on her left elbow until "a couple of months" after he first examined her, and that, by that time, the "bruise was gone." This Doctor further testified that this was "rather a minor injury" and had "cleared up * * *" When plaintiff's counsel asked the Doctor if he would expect plaintiff to suffer from her other injuries in the future, he answered in the affirmative, and further testified: "She does have pain once or twice a week now which is not terribly severe * * * she may get along fine." When plaintiff's counsel attempted to inquire concerning her medical bills, defense counsel objected on the ground that no such item was included in the damages she sought, and introduction of evidence concerning plaintiff's medical expenses was never again attempted.

When plaintiff was interrogated on direct examination about the slight damage to her car, caused by the collision, she introduced no evidence as to the cost of repairing it, but testified, in substance, that she drove it from the time of the collision in September, until the next June, when she traded it. She further testified that D car's striking it in the rear did not cause it to hit the one ahead of it. She further testified that after the collision occurred defendant asked her if she was hurt, and that she told both him and the police officer, who was called to investigate the accident, that she was not hurt. She further testified that she then did not think she was hurt, and that she did not "start hurting bad until three or four days later." Plaintiff further testified that her three children and her mother were passen-

gers in her car when the collision occurred, but that neither had any medical examination or treatment as a result thereof. Plaintiff further testified, in substance, that she did her housework after the collision, with the help of her daughters. She also testified to having painted two bedrooms, a bathroom, and one ceiling in her home between the time of the collision and the trial, but added: "I wound up in bed after I did it." She further revealed that she had been treated for bursitis in her left shoulder at some unspecified time before the collision. On cross-examination, plaintiff was asked the following questions and gave the following answers, without objection:

"Q I'll ask you if you had occasion to state to any person of your acquaintance to the effect that you were not hurt in this accident; but that you were going to claim that you were hurt because everybody else did when they had had an accident?

"A No, sir.

"Q Nothing to that effect?

"A Nothing to that effect.

"Q I will ask you if you ever made any statement to any acquaintance to the effect that Dr. S—— charged you $150.00 for a medical report that would say you were injured?

"A No, sir."

Testifying as a witness in his own behalf, defendant stated that he was a retired automobile mechanic and still worked on his own car and those of friends, occasionally. He further testified that on the day of the collision he had been on a trip to western Texas, which started at his home in Tahlequah about two weeks previously. Defendant further testified that, before starting this trip, he had had his car inspected, greased, and serviced; that on the day of the collision he had driven the car between three and four hundred miles and had had "no trouble"

in stopping the car with its brakes; that he had driven onto May Avenue off of the Expressway coming from Chickasha; that immediately previous to the collision, when he had stopped his car for a stop light at Southwest 44th and May Avenue, its brakes had performed excellently, and that, after he had driven five or six blocks further north on May Avenue, in a line of traffic he thought was traveling "somewhere between 20 and 30 miles an hour", plaintiff's car stopped in front of his, because a car in line ahead of hers was making a left hand turn; and that was when his car struck hers. Defendant further testified that he attempted to stop his car by putting his foot on the brake pedal, but that the "car just kept agoing." Defendant was allowed to further testify that, if his car's brakes had functioned as they should, it would not have hit P car. Defendant further testified that, after the police officer arrived to investigate the accident, the officer discovered a hole in the flexible line carrying the hydraulic brake fluid to his car's right front wheel. He further testified that when this line broke open, brake fluid ran out of it, and, in substance, that this was the reason his application of the brakes would not stop the car.

Defendant also called as a witness on his behalf a Dr. M, who testified that whiplash injuries are a part of his specialty. Dr. M further testified that, at defense counsel's request, he examined plaintiff on a certain date, eleven days before the trial commenced, and had x-ray pictures taken of her neck, back, and elbow. Dr. M further testified that these x-rays showed no evidence of an injury of any kind. Dr. M further testified that he examined the nerves, ligaments, and muscles that are supplied by the blood vessels in plaintiff's upper back and left arm, and found no paralysis or loss of function, or loss of nerve function. He further testified that plaintiff had no muscle atrophy in the areas involved, and that the picture he had had taken (introduced in evidence

as Defendant's Exhibit No. 1) showed only a normal curve in plaintiff's spine. When shown the x-ray picture plaintiff's Dr. S had interpreted, Dr. M testified it was not a "clear x-ray", but that what he could see revealed a normal curve. Dr. M further testified that the delay in the onset of plaintiff's severe pain was not consistent with a severe whiplash injury, and that, if hers had been that kind, the symptoms should have developed immediately. Dr. M's testimony not only indicated his disagreement with Dr. S in the type of treatment the latter had prescribed for plaintiff, but it also indicated his feeling that she had been "overtreated".

At the close of the trial, the court submitted the issues to the jury by instructions, which are not all in the record before us, but appear to have included one which, in substance, was that the operator of an automobile is not responsible for a failure of the brakes, if the failure results from a hidden defect in the braking system, which would not have been discoverable by reasonable inspection, and if the failure occurs suddenly and without warning.

After its deliberations, the jury returned a verdict for defendant, and judgment was rendered accordingly.

Thereafter, plaintiff filed a motion for new trial on the following grounds, among others:

"FIRST: Irregularity in the trial proceedings by which this plaintiff was prevented from having a fair trial.

\* \* \* \* \* \*

"FIFTEENTH: Improper cross-examination of plaintiff and misconduct of counsel for defendant, resulting in prejudice to this plaintiff, and which prevented her from having a fair trial."

Thereafter, upon being informed by the trial judge that said motion was going to be sustained, defendant filed a written request that said court specify his grounds for so ruling. Thereafter, the court entered his order granting plaintiff a new trial. The pertinent part of said order reads as follows:

"Upon request of counsel for the defendant that the Court state into the record its ground or grounds for sustaining plaintiff's motion for a new trial, herein states that the Court, after fully considering plaintiff's motion for a new trial, including the entire trial proceedings, is of the opinion that plaintiff did not have a fair trial and did not receive substantial justice, resulting in a verdict of the jury in favor of the defendant; and the Court therefore sustains plaintiff's motion for a new trial for each of said grounds and reasons, and upon each of the first and fifteenth grounds set forth in plaintiff's motion for a new trial."

From said order and/or judgment sustaining plaintiff's motion for a new trial, defendant has lodged the present appeal.

In urging reversal of the trial court's last above described ruling, defendant says the only contention made by plaintiff at said court's hearing on her motion for a new trial was that defense counsel asked plaintiff the hereinbefore quoted "impeaching" questions, without following this up "by introducing an impeaching witness on the subject" (which plaintiff contends is improper under a rule, for which her counsel quotes 88 C.J.S. Trial § 162). Under his Proposition One, defendant calls our attention to the fact that, when these questions were asked of her, plaintiff answered them, without any objection being interposed on her behalf, nor the court being requested to admonish the jury not to consider them, or to grant a mistrial on that account. Defendant contends, in substance, that when both plaintiff and defendant rested, at the end of the first day of the trial, and it was then apparent that he was not going to call any witnesses to contradict plaintiff's answers, plaintiff then could have called the court's atten-

tion to this fact and to the claimed prejudicial nature of these questions, and interposed a motion, or request, that would have invoked a ruling from the court, and thus laid a predicate for alleged error. He further says that, instead, plaintiff remained silent concerning this claimed error, until after the case was submitted to the jury, and therefore must thereafter be deemed to have waived, or acquiesced in, defense counsel's questioning, and to have, at least, chosen to take her chances on obtaining a favorable verdict. From his arguments and quotations from Booth Tank Company v. Symes, Okl., 394 P.2d 493; Walton v. Bennett, Okl., 376 P.2d 240, 244; Muenzler v. Phillips, Okl., 276 P.2d 221; Casualty Reciprocal Exchange v. Sutfin, 196 Okl. 567, 166 P.2d 434, and Peppers Gasoline Company v. Weber, 186 Okl. 471, 98 P.2d 1087 (in which appellants were denied reviews of alleged errors because they had failed to lay any proper predicate for appellate review), it appears to be defendant's view that the trial court was precluded from granting plaintiff a new trial here.

■ This view has never prevailed in this jurisdiction. On the contrary, this Court has always held that the district court may, in its discretion, sustain a motion for a new trial, even though, during the first trial, the party aggrieved by the judgment rendered, laid no predicate for appellate review. See Spence v. Park, 207 Okl. 215, 248 P.2d 1000, and Muskogee Electric Traction Company v. Reed, 35 Okl. 334, 130 P. 157. In this connection, notice also Chrysler Corporation v. Walter E. Allen, Okl., 375 P.2d 878, 886, and Rence v. Blubaugh, Okl., 285 P.2d 414. However, by renouncing the so-called "conscience" rule (see Aldridge v. Patterson, Okl., 276 P.2d 202, cited in Hankins v. Brinkman, Okl., 429 P.2d 985, 989, Cox v. Broughton, Okl., 428 P.2d 284, and other cases following it), we have recognized that a trial court's power to grant new trials is limited by the bounds of judicial

discretion; and thus, in effect, have renounced the statement in Spence v. Park, supra, to the effect that a trial court "* * * may grant a new trial on account of any error or misconduct which *in the conscience of the court* is sufficient justification for this action, * * *". (Emphasis added.)

A modern criterion for the determination of error in granting new trials is set forth in the first paragraph of the syllabus in Missouri, Kansas & Oklahoma Trans. Lines v. Jackson, Okl., 442 P.2d 287, as follows:

"It is an error in respect to a pure, simple, and unmixed question of law, under our harmless error statute, Tit. 12, O.S.1961, § 78, to grant a new trial on account of a claimed error that, as far as the record shows, is harmless."

Under his Proposition Two, defendant, in effect seeks to bring this case within the above quoted rule, by arguing, in substance, that, as far as the record shows, the jury, in rendering its verdict in his favor, could have determined, or have been of the opinion, that the evidence showed he was confronted with a sudden emergency, without negligence on his part, when his car's brakes, which had been inspected, and apparently were operating perfectly, suddenly failed; and the collision was unavoidable. Defendant also contends that, in view of the conflict in the evidence as to plaintiff's alleged injuries, the jury might have concluded that she suffered no real, or genuine, injury.

■ In approaching the question of whether or not the subject questioning of plaintiff, without thereafter showing that there was evidential basis, or reason, for it, was prejudicial error, or harmless error, we observe that plaintiff does not contend that this interrogation of her, concerning a matter irrelevant to the issue of the defendant's liability (see Layton v. Purcell, Okl., 267 P.2d 547, 533, and compare with Nash v. Hiller, Okl., 380 P.2d 77, 79), injected into the case "beneficial prejudice"

that experience has demonstrated will usually affect verdicts. In this connection, see Missouri-Kansas-Texas Railway Co. v. Drumb, Okl., 454 P.2d 308; Roberts v. Lewis, Okl., 441 P.2d 350, and Parris v. McCallay, Okl., 424 P.2d 62, 68. Consequently, if there is nothing in the record to indicate that the verdict would have been in her favor, if the qustions had not been asked, these questions can only be considered harmless. As said in Badgwell v. Lair, Okl., 325 P.2d 968, 971: "Probability of a change in the outcome of a lawsuit is the test of prejudice this court has long employed in alleged errors of practice and procedure." See also Atchison-Topeka & Santa Fe Railroad Co. v. Messmore, Okl., 339 P.2d 779, 783. After thoroughly examining the record, we are of the opinion that there is abundant, undisputed, evidence (not claimed to be incompetent) on the issue of defendant's liability to substantiate his defense and to support the verdict in his favor. (In Houston v. Pettigrew, Okl., 353 P.2d 489, relied on by plaintiff, the evidence on such issue was conflicting.) Therefore, assuming, without deciding, that the procedure complained of was improper, we can only conclude that it was harmless, when gauged by the criteria this Court has used in determining, on reviews of trial court proceedings, whether errors, allegedly committed therein, were harmless or prejudicial. Accordingly, under the hereinbefore quoted rule of Missouri, Kansas & Oklahoma Trans. Lines v. Jackson, supra, we hold that the trial court abused his discretion, and erred, when he sustained plaintiff's motion for a new trial. It therefore follows that said court's order and/or judgment sustaining said motion must be, and is, hereby reversed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, HODGES and LAVENDER, JJ., concur.

McINERNEY, J., concurs in result.

JACKSON, J., dissents.