LOPEZ-VELAZQUEZ v. GUITTIERREZ DE ALCALA
2022 OK CIV APP 19
Case Number: 118161
Decided: 07/19/2021
Mandate Issued: 06/02/2022
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2022 OK CIV APP 19, __ P.3d __

 

MARIA LOPEZ-VELAZQUEZ, individually and on behalf of AURORA VELAZQUEZ, a minor, Plaintiff/Appellant,
v.
ALEJANDRA GUITTIERREZ DE ALCALA, Defendant/Appellee,
and
OLIVAS FERNANDO, and JOSE VALLADARES, Defendants.

APPEAL FROM THE DISTRICT COURT OF
GARFIELD COUNTY, OKLAHOMA

HONORABLE TOM NEWBY, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Eric N. Edwards, ERIC N. EDWARDS, PC, Enid, Oklahoma, for Plaintiff/Appellant

Christopher C. King, Bradley E. Bowlby, STARR, BEGIN & KING, PLLC, Tulsa, Oklahoma, for Defendant/Appellee

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Plaintiff Maria Lopez-Velazquez, individually and on behalf of Aurora Velazquez, a minor, appeals from the trial court's judgment memorializing a jury verdict in favor of Defendant Alejandra Guitierrez De Alcala. After review of the record and the parties' arguments, we reverse and remand for further proceedings.

BACKGROUND

¶2 This case arises from an automobile collision in Enid, Oklahoma, in July 2015. Lopez-Velazquez and her daughter, Aurora Velazquez, were passengers in a car driven by De Alcala that collided with a car driven by Defendant Jose Valladares. The case was tried to a jury on Lopez-Velazquez's negligence claim against De Alcala.

¶3 It is undisputed that, after exiting Highway 412 heading west onto an off-ramp, Valladares failed to stop at a stop sign located where the off-ramp ends at the intersection of South 30th Street and East Oklahoma Avenue. Rather than stopping, he continued at high speed driving west across the four lanes of South 30th Street through the intersection.

¶4 Valladares was traveling at a high rate of speed, and evidence was introduced at trial that he was traveling at highway speeds down the off-ramp and through the stop sign at as much as 70 miles an hour.

¶5 Lopez-Velazquez argues that De Alcala was negligent in failing to act sooner to avoid the collision. Counsel for Lopez-Velazquez stated in his closing argument to the jury that while Valladares "bears responsibility too, . . . [De Alcala] bears an equal amount of responsibility in this case[.]" Lopez-Velazquez testified at trial, for example, that she yelled as many as four times to warn De Alcala about the other car entering the roadway, but De Alcala nevertheless proceeded forward without braking, striking Valladares' car in the rear. This testimony was corroborated by the testimony of Lopez-Velazquez's daughter, who was eight years-old at the time of the accident. On the other hand, Lopez-Velazquez's testimony was contradicted at trial by De Alcala's testimony, as well as by the testimony of her daughter, who was nineteen at the time of the accident and also a passenger.

¶6 The jury returned a unanimous verdict in favor of De Alcala, after which counsel for Lopez-Velazquez moved for a judgment notwithstanding the verdict on the basis that no reasonable juror could determine De Alcala was not negligent and that the evidence was insufficient to support the verdict.

¶7 Counsel for Lopez-Velazquez also moved for a mistrial on the basis that certain testimony elicited from the officer investigating the accident--in particular, his testimony that he cited Valladares for, among other things,

¶8 Counsel for Lopez-Velazquez also moved for a mistrial on the basis of De Alcala's counsel's description to the jury of Valladares as "an illegal immigrant" and that Valladares was on a "joyride" with a "drunk passenger."

¶9 The trial court denied the motions, stating that, regarding the motion for judgment NOV, "Quite honestly, [I] would have been surprised" if the jury had gone "the other way" based on the evidence presented. Regarding the motion for mistrial based on the officer's testimony, the trial court denied the motion, and further denied the motion for mistrial as to the objected-to statements by De Alcala's counsel, opining, "I do not believe that [the statements in question] impacted the jury to the extent that it affected their verdict in this matter."

¶10 Lopez-Velazquez appeals from the trial court's judgment memorializing the jury's verdict in favor of De Alcala.

STANDARD OF REVIEW

¶11 "Rulings concerning the admission of evidence are measured against the abuse of discretion standard." Holm-Waddle v. William D. Hawley, M.D., Inc., 1998 OK 53967 P.2d 1180Spencer v. Oklahoma Gas & Elec. Co., 2007 OK 76

¶13, 171 P.3d 890

The admission and exclusion of evidence is within the sound discretion of the trial court. Jordan v. Gen. Motors Corp., 1979 OK 10590 P.2d 193Mills v. Grotheer, 1998 OK 33957 P.2d 540

King v. King, 2009 OK CIV APP 49212 P.3d 1232

"Before any claimed error concerning the admission or exclusion of evidence will be deemed reversible error, an affirmative showing of prejudicial error must be made." Kahre v. Kahre, 1995 OK 133916 P.2d 1355see also 12 O.S. 2011 § 2104
affected . . . .").

Wright v. Board of Cnty. Comm'rs of Carter Cnty., 2020 OK CIV APP 46475 P.3d 409

ANALYSIS

I. Admissibility of the Officer's Testimony

¶12 As grounds for reversal, Lopez-Velazquez argues that the investigating officer's testimony regarding liability for the collision and the citations he issued to Valladares and did not issue to De Alcala was inadmissible. Counsel for Lopez-Velazquez properly objected to this testimony by a motion in limine and again at the time the officer testified, and by a subsequent motion for mistrial, but the trial court disagreed with the argument that the testimony was inadmissible under Gabus v. Harvey, 1984 OK 4678 P.2d 253

¶13 The officer in fact testified on direct examination that he was there in court specifically to testify as to whose fault caused the accident. After allowing the testimony, the trial court pursuant to a request by Lopez-Velazquez's counsel then cautioned the jury that "[t]his officer is not here to tell you who caused the accident or who is responsible for the accident. So you're to disregard any statement about who is the cause or responsible person. That's up to you." But no correction was offered in regard to the evidence as to the officer's citations to one party and not to the other. In overruling Lopez-Velazquez's objection to the officer's testimony as to citations issued, the trial court stated before the jury, "[Officer Maddex] can answer as to whether he issued any citations. We're not going to resolve any issue about the citation itself." A short while later, the court reiterates, "[Officer Maddex] can issue citations, but we're not going to get into what was the result of those citations."

¶14 De Alcala maintains on appeal that the officer's testimony in this regard is admissible to show Valladares' negligence per se:

Counsel for Defendant De Alcala merely asked Officer Maddex what citations the latter gave. This is an important distinction from an opinion as to fault, under oath, by an officer sworn in as an expert (as in Gabus). Traffic citations are a matter of common knowledge and experience; jurors understand that a citation is a claim, not a final finding of guilt. Jurors also understand, as all drivers do, that a citation given, or not given, is not necessarily dispositive of fault or causation, or lack thereof.

De Alcala argues that although Lopez-Velazquez cited Walker v. Forrester, 1988 OK 102764 P.2d 1337Walker, saying: "In Walker, the Court ruled that evidence that a defendant had paid--not simply been issued--a traffic citation was inadmissible without proof that the defendant had knowingly entered a plea of guilty to same. Here, Officer Maddex never testified that Defendant Valladares paid the ticket." (Citation omitted.) We are unpersuaded by this distinction. This argument simply reinforces the policy behind prohibiting evidence of which party was cited for a traffic violation without evidence of a guilty plea.

¶15 The present case appears to be an example of an officer "effectively put[ting] the stamp of expertise upon an issue that the jury was fully competent to decide," which risked "permit[ting] the jury to substitute the opinion of the officer for the combined judgment of the jury." Gabus, 1984 OK 4

¶16 In Gabus, "[t]he question presented . . . [was] whether the opinion of an investigating officer, relating the cause of an automobile-pedestrian accident, is admissible under the Oklahoma Evidence Code[.]" Gabus, 1984 OK 4Gabus appealed "from the trial court's refusal to grant a mistrial after the investigating officer of an automobile-pedestrian accident was permitted to state his opinion that the accident was caused by [the plaintiff's] failure to yield the right of way." Id. ¶ 2. That is,

[o]ver the objection of [the plaintiff's] counsel, the officer was allowed to respond to a question posed by [the defendant's] counsel as to what caused the accident to happen. The officer stated that, in his opinion, the pedestrian had failed to yield right of way to the moving car.

[The plaintiff's] counsel moved for a mistrial, asserting that the officer's opinion invaded the province of the jury because it determined the ultimate issue of fault.

Id. ¶¶ 5-6. The Oklahoma Supreme Court agreed, stating:

The testimony as to causation introduced here did not assist the jury. It concerned facts that could be readily appreciated by any person who drives an automobile or crosses streets. No special skill or knowledge was needed to understand these facts and draw a conclusion from them. In such a case as this, where the normal experiences and qualifications of laymen jurors permit them to draw proper conclusions from the facts and circumstances, expert conclusions or opinions are inadmissible. The expert conclusion here was not helpful and should not have been admitted.

Id. ¶ 18.

¶17 In addition to the Gabus holding on the inadmissibility of such fault testimony by an officer, we have the Supreme Court's guidance on the citation issue. The Supreme Court in Walker v. Forrester, 1988 OK 102764 P.2d 1337Id. ¶ 5.

¶18 The Walker Court agreed with the trial court's exclusion of that evidence, stating that the record contained no proof that the defendant ever pleaded guilty to the citation, the defendant's deposition testimony being descriptive of a plea of nolo contendere and hence not admissible. The Supreme Court succinctly stated: "Our cases have made it abundantly clear that such evidence is only admissible in a subsequent civil proceeding when it is shown that the defendant voluntarily and knowingly entered a plea of guilty to the traffic citation." Id. ¶ 7 (citations omitted and emphasis added). The record in Walker had no such proof, and according to the Supreme Court, "The Court of Civil Appeals decision in this case represents a significant departure from this settled line of cases." Id. This applies equally here, particularly when the evidence consists of an officer testifying that he gave traffic citations to one driver but not to the other, and no evidence of a plea of any kind to those citations.

¶19 If Valladares had pled guilty--De Alcala offered no such evidence--the plea would be admissible pursuant to the Oklahoma Evidence Code, 12 O.S.2011 & Supp. 2020 §§ 2101-3011. A guilty plea is an admission of guilt, making it admissible for probative reasons, but a citation is simply an accusation without proof of guilt. The error in allowing citation evidence without a guilty plea was compounded by the fact that the officer's citation testimony was clearly offered to convict Valladares and exculpate De Alcala in the minds of the jurors.

II. Effect of the Prohibited Testimony

¶20 Having reviewed and considered the record and arguments presented, we conclude that under Oklahoma law, evidence of a citation issued by an officer, without an admission of guilt, may not properly be presented to a jury deciding the issue of liability or fault in an automobile negligence case. The trial court caused confusion for the jury when it allowed the fault and citation testimony, under the officer's imprimatur, and then advised the jury that the officer was not there "to tell you who caused the accident." That being the case, then allowing the citation evidence to be heard by the jury had the effect of doing what is prohibited--using the officer to establish fault. Once the trial court denied Lopez-Velazquez's motion in limine and allowed the inadmissible evidence over objection, the appropriate cure was a mistrial, which the trial court also denied.

¶21 De Alcala argues that this constituted "harmless error" because Lopez-Velazquez suffered no prejudice, but on this point, we have the guidance of Gabus, in which the Supreme Court held that an officer's testimony as to fault in the accident was plainly prejudicial because it "effectively put the stamp of expertise upon an issue the jury was fully competent to decide." Gabus v. Harvey, 1984 OK 4Gabus Court stated:

[T]his Court emphasized the prejudicial effect of the admission of an investigating officer's opinion as to fault in an automobile collision case:

". . . Such testimony given by a witness occupying an official position, assuredly must have greatly impressed the jury, particularly since the average laymen [sic] undoubtedly would be inclined to place the stamp of authenticity upon testimony by such an officer. . . ."

Id. ¶ 26 (quoting Maben v. Lee, 1953 OK 139260 P.2d 1064

¶22 "[E]rrors in admission or rejection of evidence which [result] in miscarriage of justice or constitute substantial violation of some constitutional or statutory right require reversal of a cause by this Court." Davon Drilling Co. v. Ginder, 1970 OK 51467 P.2d 470Gabus and followed in this Court's case of Moore v. Blackwell, 2014 OK CIV APP 37325 P.3d 4

III. Remaining Propositions of Error

¶23 As a final matter, Lopez-Velazquez raised other propositions of error as grounds for reversal--De Alcala's counsel's veiled references to the parties' immigration status and his argument to the jury that Valladares was out on a "joyride," his passenger was drunk, and Valladares was driving without a license. De Alcala responds that "[e]ven if the word 'joyride' wasn't appropriate [because it might imply the car was stolen], it is hardly one that would substantially influence the jury's verdict vis [à] vis Defendant De Alcala." De Alcala urges rejection of the remaining arguments to the jury because they were not made about Lopez-Velazquez, and if there were any prejudicial effect in the remarks, it would have been toward Valladares.

¶24 We reject De Alcala's positions on these points. Although these errors standing alone might not constitute sufficient grounds for reversal and a new trial, our reversal on more substantial grounds requires us to note our concurrence with Lopez-Velazquez's objection to this conduct and direct the trial court on remand to prohibit the injection of such argument that appears to be irrelevant, prejudicial, and unsupported by the evidence.

CONCLUSION

¶25 After review, we conclude it was prejudicial error to admit the officer's testimony regarding fault in causing the accident and regarding the citations he issued to Valladares and not to De Alcala, error which requires reversal and remand for a new trial.

¶26 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

HIXON, J. (sitting by designation), concurs, and BARNES, J., dissents.

FOOTNOTES

Head v. State, 2006 OK CR 44

¶ 26, 146 P.3d 1141Ryder v. State, 2004 OK CR 283 P.3d 856

Moore v. Blackwell, 2014 OK CIV APP 37325 P.3d 4See 8 Am. Jur.2d, Automobiles & Highway Traffic § 1157 (2007)." Id. ¶ 26 (Fischer, J., concurring in part and dissenting in part).

 

 

BARNES, J., dissenting:

¶1 The Majority takes the position that the trial court's evidentiary ruling requires, automatically, that a new trial be granted without application of any harmless error review. The Majority's position is that, in all cases in which such a ruling occurs, a new trial "must be granted." The Majority states: "Admission of such evidence when objected to is error requiring a new trial because allowing the jury to hear this evidence [is] . . . highly prejudicial." The Majority further states that "[i]f the trial court erroneously admits such evidence over objection and denies a mistrial, if the verdict is adverse to the objecting party, a new trial must be granted[.]" The Majority does not undertake any harmless error review.

¶2 To use language recently employed by the Oklahoma Supreme Court, the Majority appears to treat the error in question as one that is "inherently prejudicial," see In re K.H., 2021 OK 33K.H. Court concluded the trial court's evidentiary rulings were inherently prejudicial, the K.H. Court stressed the constitutional dimensions involved in that case, including (1) the potential loss of the parties' "parental rights to their biological children," (2) the lack of "due process notice of the statutory conditions on which the State believes the children are deprived," and (3) the parties' right to a fair trial in the context of a termination case. Id. ¶¶ 1, 47. See also id. (Darby, C.J., concurring specially) (Emphasizing that the case concerns "whether the parents were deprived of constitutional due process at the trial to end their constitutional right to raise their own children," that "the trial court's error was fundamental and regards the safe-guarded constitutional right to parenthood," and that the trial court's error "violated the parents' fundamental, constitutional rights to due process and to a fair trial regarding their right to parent their children."). Although I agree with the Majority that evidence pertaining to the officer's citations "was not helpful and should not have been admitted,"

¶3 Indeed, the dissent in K.H. expressed concern that "the majority's application of the heightened standard may . . . serve to misguide other courts into thinking harmless error review has been eliminated in termination-of-parental-rights cases or in any case where the trial court erroneously admits evidence in violation of section 2403 of the Oklahoma Evidence Code." Id. ¶ 1 (Combs, J., dissenting). Clearly, the K.H. Court did not intend to eliminate harmless error review of evidentiary rulings in ordinary civil cases, nor did the Gabus Court intend to eliminate harmless error review for the type of ruling at issue.

¶4 Moreover, the trial court agreed to admonish the jury at the time of the officer's testimony. That is, pursuant to a request by counsel for Lopez-Velazquez, the trial court admonished the jury that "[t]his officer is not here to tell you who caused the accident or who is responsible for the accident. So you're to disregard any statement about who is the cause or responsible person. That's up to you." The Oklahoma Supreme Court has stated that "it cannot be presumed as a matter of law that the jury will fail to heed the admonition given by the court." Covel v. Rodriguez, 2012 OK 5272 P.3d 705See also A. & A. Cab Operating Co. v. Mooneyham, 1943 OK 363142 P.2d 974

¶5 It is easy to imagine numerous scenarios that disprove the Majority's view that the error in question is always highly prejudicial -- and the present case stands as one of them. Regardless, and even assuming that evidence regarding citations issued by an officer is always to some extent intrinsically prejudicial, a harmless error review would still need to be undertaken. Here, however, the Majority fails to apply even the harmless error review applicable to constitutional errors. That is, reversal is appropriate as a result of a "constitutional error" "unless it can be affirmatively ascertained from the record that no harm resulted therefrom," K.H., ¶ 29 (emphasis added) (citation omitted), yet the Majority applies no harmless error analysis whatsoever. Such an automatic reversal is appropriate only for "constitutional errors that are considered structural and thus defy analysis by harmless error standards and require automatic reversal[.]" K.H., ¶ 13 (Combs, J., dissenting). As noted by the dissent in K.H.,

Incidentally, the Oklahoma Court of Criminal Appeals has recognized a third type of error, which it calls a "structural" error because it affects or pervades the entire trial from beginning to end, "such as the absence of counsel for a defendant, a biased judge, the unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and the right to a public trial." Robinson v. State, 2011 OK CR 15255 P.3d 425Golden v. State, 2006 OK CR 2127 P.3d 1150

K.H., ¶ 7 n.20 (Combs, J., dissenting). See also Pierce v. Pierce, 2001 OK 9739 P.3d 791not treated, as a matter of law, as harmless error. Some rights are 'too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice resulting from [their] denial.'" (citations omitted) (footnote omitted)).

¶6 But, surely, the error in question in the present case should not be deemed to be such a "structural" error that, in every instance, and regardless of the underlying circumstances, results in reversal, nor does the Majority even assert the error in question affected a right of constitutional magnitude,K.H., thus requiring a "heightened standard of harmless error review." See K.H., ¶ 1 (Combs, J., dissenting). The test applicable to the trial court's evidentiary ruling in this automobile negligence action should therefore be as follows: "For errors that are not inherently prejudicial, the test of prejudice is the 'likelihood that the verdict would have been different had [the errors] not occurred, as measured by the usual criterion of the verdict's support in the evidence.'" K.H., ¶ 28 (emphasis omitted) (citing, inter alia, Karriman v. Orthopedic Clinic, 1973 OK 141516 P.2d 534Karriman, the Court explained that "the test of prejudice" is "[t]he likelihood that the verdict would have been different had [the error] not occurred." 1973 OK 141See also Mullendore v. Mullendore, 2012 OK CIV APP 100288 P.3d 948Taliaferro v. Shahsavari, 2006 OK 96154 P.3d 1240id. ¶ 15 (footnote omitted).

¶7 Such a review requires "examination of the entire record," Falletti v. Brown, 1971 OK 18481 P.2d 744Hastings, 461 U.S. at 509 (citations omitted).See, e.g., Tanner v. Westbrook, 174 F.3d 542, 548 (5th Cir. 1999) ("This question is not susceptible to mechanical analysis; decisions are made on a case-by-case basis." (citation omitted)). Rather, appellate courts must review the particular circumstances of the case to determine whether the likelihood exists that the result would have been different had the evidence been properly excluded. See Montgomery v. Murray, 1970 OK 226481 P.2d 755United States v. Flanagan, 34 F.3d 949, 955 (10th Cir. 1994) ("[W]e must perform our harmless error analysis by judging the evidence in the context of all of the evidence presented at trial."). For example, the Karriman Court "determined that, since the verdict is in accord with the overwhelming weight of the evidence, it would not have been different had the subject errors not occurred." 1973 OK 141

¶8 The verdict in the present case is in accord with the overwhelming weight of the evidence. Indeed, the evidence in the present case is, in many particulars, not even conflicting, and a review of the asserted error in the context of all the evidence presented at trial fails to reveal the necessary likelihood that the jury's verdict would have been different had the evidence pertaining to the citations not been admitted.

¶9 Furthermore, based on the undisputed range of relevant speeds and distances, De Alcala applied her brakes during the mere fraction of a second that elapsed between the time Valladares neared the stop sign and the moment of impact.

¶10 As stated by the trial court, "[q]uite honestly, [I] would have been surprised" if the jury had gone "the other way" based on the evidence presented. Indeed, it can be affirmatively ascertained from the record that no harm occurred as a result of the evidentiary ruling in question and, thus, even under a heightened harmless error review standard, the jury's verdict should be affirmed. Of course, the trial court's evidentiary ruling is not subject to such a heightened harmless error review, and the verdict should be affirmed unless De Alcala demonstrates on appeal that the jury's verdict would have been different had the error not occurred, as measured by the usual criterion of the verdict's support in the evidence. However, a review of the argument section of De Alcala's Brief-in-chief reveals that she has made no real effort on appeal to marshal the facts and evidence in an attempt to show that, in the context of the case actually presented to the jury, the verdict probably would have been different but for the error.

¶11 Even taking on this task for the appellant,

¶12 Based on these latter statements in the instructions, counsel for Lopez-Velazquez asserted that because De Alcala testified she saw the vehicle in the distance as it traveled along the off-ramp -- that "in her own words she saw him coming way back here several hundred feet before he even entered this intersection" -- that "[s]he was on notice" and, therefore, "had every opportunity and the duty to take evasive action to slow down and be a little bit more careful." However, the jury was required, and instructed, to read all of the instructions, including those regarding yielding the right-of-way and those regarding De Alcala's right to assume that other drivers will obey the law, "as a whole."

¶13 Although De Alcala may have seen Valladares' car traveling down the off-ramp at a high speed after exiting the highway, she was not required to anticipate negligence, or unlawful operation, on the part of Valladares, and she had the right to assume that he, like other drivers driving fast down the off-ramp, would obey the law. That is, she had a right to assume that, like other vehicles "going pretty fast" down the off-ramp in question, Valladares' car would eventually come to a stop, even if abruptly. Thus, contrary to the assertions of counsel for Lopez-Velazquez, De Alcala had no duty to immediately "take evasive action to slow down" merely because she "saw the vehicle in the distance as it traveled along the off-rmp[.]"

¶14 Lopez-Velazquez thus argued that De Alcala was negligent based on her actions undertaken during the fraction of a second that transpired from the moment Valladares ran the stop sign until the moment of the collision. Lopez-Velazquez's request that the jury find De Alcala negligent based on her failure to press the brakes "one tenth of a second" sooner, when considered together with the definition of "ordinary care" provided to the jury, defeats the requisite probability that the jury would have reached a different verdict in the absence of the admission of evidence regarding citations. The jury was instructed that ordinary care "is the care which a reasonably careful person would use under the same or similar circumstances," and there must exist some "[failure] to so something which a reasonably careful person would do, or [the performance of] something which a reasonably careful person would not do[.]" Importantly, the jury was required to follow this instruction together with the instruction that De Alcala had the right to assume that Valladares would obey the law as he traveled down the off-ramp. Although an extraordinary driver may have been able to avoid the collision by responding "one-tenth of a second" sooner, such a possibility is an insufficient basis for remanding this case for a second jury trial.

¶15 It is noteworthy that Lopez-Velazquez did not present any evidence, not to mention expert testimony, at trial regarding stop time, tire treads, road conditions, etc. No testimony of an accident reconstructionist was presented. Counsel for Lopez-Velazquez instead merely speculated in his closing statement that a car traveling 35 miles per hour, like Ms. De Alcala's vehicle, "doesn't take 3-, 4-, or 500 feet" to stop; instead, "you're going to stop in 100 feet or less" because "[a]t 30 miles an hour, you're going 44 feet per second." These assertions regarding vehicular braking and deceleration are distinguishable from the straightforward distance and speed calculations noted above, and constitute mere speculation and argument of counsel. The jury was specifically instructed in this case: "Your decision must be based upon probabilities, and not possibilities. It may not be based upon speculation or guesswork."See also Carbajal v. Precision Builders, Inc., 2014 OK 62333 P.3d 258In re Guardianship of Stanfield, 2012 OK 8276 P.3d 989

¶16 For all these reasons, I respectfully dissent from the Majority's opinion reversing the jury's verdict and remanding for a new trial. In my view, a harmless error review must be applied. Moreover, application of such a review reveals an absence of the requisite probability that the jury's verdict would have been different but for the error in question. Therefore, the asserted error constitutes harmless error, and the jury's verdict should not be found to be subject to reversal. Accordingly, I would affirm the trial court's judgment memorializing the unanimous verdict.

FOOTNOTES

unless it can be affirmatively ascertained from the record that no harm resulted from the error in question. As stated below, the Majority does not even undertake such a heightened harmless error review.

Gabus v. Harvey, 1984 OK 4678 P.2d 253

Gabus" supports its conclusion that reversal should be automatic for the type of error at issue. However, in Gabus, the Court proceeded to set forth a harmless error analysis -- albeit an abbreviated one -- after finding the testimony at issue in that case to be inadmissible. The Gabus Court cited, for example, to 12 O.S. 2011 § 78Gabus Court ultimately reversed and remanded for a new trial, the Court stated that it "find[s] it highly probable that in this case the jury was unduly influenced by the opinion of one whose opinion was not needed by them to reach an intelligent conclusion as to the cause of the accident," id. ¶ 28 (emphasis added), and stated elsewhere in the opinion that "[m]uch of the evidence introduced by the parties at trial was conflicting," id. ¶ 4 (emphasis added). Thus, we do not view the analysis in Gabus as inconsistent with the established rule in Oklahoma, discussed at greater length below, that, for non-constitutional errors, the appellant must demonstrate that the verdict would have been different had the error not occurred. Indeed, the Gabus Court's description of the facts as "conflicting" implies that a likelihood did exist that the jury would have reached a different verdict had the error not occurred. Moreover, because courts should refrain from fashioning a rule whose violation mandates an automatic reversal, see, e.g., United States v. Hasting, 461 U.S. 499, 509 (1983) ("[W]hen courts fashion rules whose violations mandate automatic reversals, they retreat from their responsibilities, becoming instead impregnable citadels of technicality." (internal quotation marks omitted) (citation omitted)), it is all the more important not to mistake the Gabus Court's abbreviated style for an endorsement of automatic reversal. See also n.11, infra.

error has occurred." Daniel Epps, Harmless Errors and Substantial Rights, 131 Harv. L. Rev. 2117, 2122 (2018). "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and . . . the Constitution does not guarantee such a trial." Hastings, 461 U.S. at 508-09 (citations omitted). In Jauregui v. City of Glendale, 852 F.2d 1128 (9th Cir. 1988), the Ninth Circuit explained:

The only apparent "prejudice" suffered by the [complaining party] as a result of these evidentiary rulings is that [it] lost the case. Such is not sufficient prejudice, otherwise every losing party could obtain a reversal based on that fact alone. To show reversible prejudice a party must demonstrate that the allegedly erroneous evidentiary ruling more probably than not was the cause of the result reached by the court.

Id. at 1133 (citation omitted).

It is well settled that we presume juries follow their instructions. In this instance, we find nothing in the record to overcome the legal presumption that the jury obeyed the trial judge's admonishment. The trial judge's admonishment to the jury was sufficient to cure any error that may have occurred.

Head v. State, 2006 OK CR 44146 P.3d 1141

Cf. State of Connecticut v. Kirsch, 820 A.2d 236, 251 (Conn. 2003) (In a criminal action, the Connecticut Supreme Court explained that "[o]ur standard of review of an evidentiary ruling is dependent on whether the claim is of constitutional magnitude," and, if it is not, then "in order to establish reversible error on an evidentiary impropriety, the [complaining party] must prove both an abuse of discretion and a harm that resulted from such abuse," and "[t]his requires that the [complaining party] demonstrate that it is more probable than not that the erroneous action of the court affected the result." (internal quotation marks omitted) (citations omitted)).

United States v. Lane, 474 U.S. 438, 445 (1986). Different formulations of this same approach by courts from other jurisdictions are illuminating. As concisely stated in one jurisdiction, "evidentiary errors are harmless unless" it is shown "that absent the error, a different result would have been reached." State of North Carolina v. Harrington, 614 S.E.2d 337, 348 (N.C. Ct. App. 2005) (citation omitted). See also Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 554 F.3d 164, 173 (1st Cir. 2009) ("Erroneous evidentiary rulings are harmless if it is highly probable that the error did not affect the outcome of the case." (internal quotation marks omitted) (citation omitted)).

Berger v. United States, 295 U.S. 78, 82 (1935). See also 131 Harv. L. Rev. at 2129. Interestingly, prior to the shift toward application of harmless error review early in the Twentieth Century,

American courts were broadly influenced by the old Exchequer rule of automatic reversal followed by English courts in the nineteenth century. By the beginning of the nineteenth
century, . . . the prevalent approach in American courts was to apply a presumption of prejudice or a strict rule of automatic reversal in criminal (and civil) cases upon a finding of error below. As one might imagine, such an approach, whatever its merits, led to absurd results . . . .

Nevertheless, American legislatures were slow to follow Parliament's lead in the late nineteenth century and early twentieth century to [abolish] the old Exchequer rule . . . .

As American reformers often complained . . . , American courts and legislatures seemed to adhere steadfastly to practices inherited from the English, long after the English had discarded the approach as unsatisfactory. American appellate courts of this era were described as "impregnable citadels of technicality," which created an environment where "the fear of reversal hangs as a sword of Damocles over the heads of prosecutors and trial judges."

Roger A. Fairfax, Jr., A Fair Trial, Not A Perfect One: The Early Twentieth-Century Campaign for the Harmless Error Rule, 93 Marq. L. Rev. 433, 436-37 (2009).

Assuming arguendo, that the jury did infer, from the attorney's question, that the officer wrote such a statement into his report [that the color of the traffic lights was red], we cannot escape the conclusion that such an inference would have been merely cumulative in effect and insufficient, in itself, to have worked prejudice against plaintiff. As heretofore indicated, the crucial issue at the trial was whether the lights facing defendant, when he entered the intersection, were green or red -- rather than what the police officer wrote in his report about it. Since defendant's testimony, supported by testimony from the city's experts, showed overwhelmingly that those lights were then green, it does not appear that the verdict would have been different, in the absence of the inference plaintiff complains of. Probability of a change in the outcome of the lawsuit is the test of prejudice this court has long employed in alleged errors of practice and procedure. . . . Measured by that criterion, the alleged error in question . . . must be considered harmless.

Badgwell v. Lair, 1958 OK 122325 P.2d 968

Shawareb v. SSM Health Care of Okla., Inc., 2020 OK 92480 P.3d 894second jury trial. If the appellant has not demonstrated that the verdict would have been different (or that a probability exists that the verdict would have been different), then the appellate court, in remanding the case for a new trial, has "retreat[ed] from [its] responsibilities" and become a mere "citadel[] of technicality." Hasting, 461 U.S. at 509. Requiring a trial to begin anew under such circumstances results only in an unjustified waste of judicial resources and taxpayer dollars, not to mention a resulting injustice to the appellee. "The goal . . . [is] to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error." Id. at 509 (citations omitted).

See also 12 O.S. 2011 § 2202Indep. Sch. Dist. No. 52 of Oklahoma Cty. v. Hofmeister, 2020 OK 56473 P.3d 475Bd. of Ed. of Indep. Sch. Dist. No. 20 of Craig Cty. v. Adams, 1970 OK 23465 P.2d 464

In criminal cases the Government seeks to deprive an individual of his liberty, thereby providing a good reason to require the Government to explain why an error should not upset the trial court's determination. And the fact that the Government must prove its case beyond a reasonable doubt justifies a rule that makes it more difficult for the reviewing court to find that an error did not affect the outcome of a case. See United States v. Olano, 507 U.S. 725, 741 . . . (1993) (stating that the Government bears the "burden of showing the absence of prejudice"). But in the ordinary civil case that is not so.

Shinseki v. Sanders, 556 U.S. 396, 410-11 (2009).

Johnson v. Ford Motor Co., 2002 OK 2445 P.3d 86